SUPERIOR COURT
OF THE
STATE OF DELAWARE

MEGHAN A. ADAMS
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0634

July 30, 2021

Christopher J. Day, Esq.
DAY LAW GROUP, LLC
Executive Center
501 Silverside Road
Suite 148
Wilmington, DE 19809

Nancy Shane Rappaport, Esq.
Brian A. Biggs, Esq.
DLA PIPER LLP
1201 North Market Street
Suite 2100
Wilmington, DE 19801

RE: *Encore Preakness, Inc. v. Chestnut Health and Rehabilitation Group, Inc., et al.*
C.A. No.: N17C-03-1677 MAA

Dear Counsel:

This is my decision on Kane Financial Services' ("Kane"), Airamid Health Services, LLC's ("Airamid"), and Airamid Health Consulting, LLC's (collectively, "moving defendants") motion for summary judgment in the above-referenced action. A motion for summary judgment is properly granted against a party who fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial.[1] For the reasons that

---

[1] *Watson v. Taylor*, 2003 WL 21810822, at \*2 (Del. Aug. 4, 2003); *see also Tenneco Auto., Inc. v. El Paso Corp.*, at \*3 (Del. Ch. Jan. 8, 2007) ("In order to withstand a motion for summary judgment, a party is required to present some

follow, I conclude that plaintiff Encore Preakness, Inc. ("Encore") has failed to present evidence sufficient to support the elements of tortious interference with contractual relations. As such, the moving defendants' motion for summary judgment is granted.

## I. Background[2]

A. <u>Facts</u>

Encore, a provider of medical therapy staffing to various skilled nursing and rehabilitation care centers across the country, entered into therapy service agreements ("TSAs") with fourteen long-term, therapy care facilities ("Chestnut Facilities") owned by Chestnut Health and Rehabilitation Group, Inc. ("Chestnut") (collectively, "Chestnut Defendants") on February 1, 2016.[3] Pursuant to the TSAs, Encore would provide therapy services to residents of each facility.[4] The Chestnut Defendants agreed to pay Encore in accordance with an agreed-upon rate schedule,

---

evidence, either direct or circumstantial, to support all of the elements of the claim.").

[2] The facts below are drawn from the pleadings and the evidence submitted by the parties. *See* Super. Ct. Civ. R. 56(c). The evidence is viewed in the light most favorable to Encore as the non-movant, who receives the benefit of all reasonable inferences.

[3] Dkt. 1, Complaint ("Compl.") ¶¶ 29-30, 34. Each of the TSAs contain nearly identical terms and conditions. Compl. ¶ 35.

[4] Compl. ¶ 36.

with payment in full for each of Encore's invoices due on a net sixty-day basis.[5]

Kane and the Airamid entities were not parties to the TSAs.

### 1. Chestnut Facilities' Real Estate and Consulting Agreements

Because Chestnut did not own the real estate at the Chestnut Facilities, Chestnut, as the tenant, entered into a Master Lease and Security Agreement (the "Lease") with Ventas on March 19, 2014.[6]  As discussed below, Ventas later assigned certain rights to Care Capital Properties ("CCP") under the Lease, who would become Chestnut's landlord.[7]

On the same date, each of the Chestnut Facilities entered into contracts with Hybris CH Health Services LLC ("Hybris"), a consulting company, to assist with the operational side of the nursing facilities.  Hybris was to perform consulting services, such as clinical and rehabilitation services, as well as human resources tasks "as agent and on behalf of" each Chestnut Facility.[8]

Under the Lease, Madison Health Services ("Madison") was to purchase services from Airamid and deliver them to Hybris under a services delivery agreement.[9]  Hybris was then to deliver those services to each of the Chestnut

---

[5]      Compl. ¶ 37.

[6]      *See* Defendants' Opening Brief in Support of their Motion for Summary Judgment ("Def.'s Mot.") Ex. 1.

[7]      Def.'s Mot. Ex. 2 at KANE0002134 at Recital C.

[8]      Def.'s Mot. Ex. 3 atKANE0001078 at preamble, § 3, Ex. B.

[9]      Def.'s Mot. Ex. 1 at KANE0002032.

3

facilities via its consulting agreements, as mentioned above.[10]  Certain employees of

Airamid, including the company's CEO, Mel Beal, provided consulting and

management services directly to Hybris from 2014 through 2016.[11]

Kane also entered into financial services contracts on March 19, 2014 with

the Chestnut Facilities to perform "back office" services on their behalf and at the

operators' direction.[12]  Specifically, Kane performed, "as agent and on behalf of" the

Chestnut Facilities, services including general accounting, payroll, processing

invoices, and establishing payment terms "per Operator protocols."[13]  Kane, like

Encore, was a vendor for the Chestnut facilities.[14]  No direct contractual relationship

was established between Encore and any of the moving defendants.

2. *Chestnut Facilities Face Default; Transition of Therapy Services Providers and Operators*

Before Encore entered into the TSAs, Accomplish Therapy, Inc.

("Accomplish") provided therapy services to the Chestnut Facilities.[15]  In 2015, the

Chestnut Facilities faced mounting concerns that they were generating inadequate

---

[10]  Def.'s Mot. Ex. 1 at KANE0002032.

[11]  Def.'s Mot. Ex. 26 at 19:3-9.

[12]  Def.'s Mot. Ex. 4 at KANE0001519.

[13]  Def.'s Mot. Ex. 4 at KANE0001519, 1541.

[14]  The same is true of Airamid Health Services LLC and Airamid Health Consulting, LLC (collectively, "Airamid entities"), as discussed above.

[15]  Plaintiff's Brief in Response to Defendants' Motion for Summary Judgment ("Pl.'s Opp.") at 9.

4

revenue to cover expenses and they ultimately defaulted on the Lease.[16] On January 2, 2016, Chestnut, CCP, Hybris, Kane, and Madison Health Services entered into a Confidential Settlement Term Sheet (the "Term Sheet") whereby, among other things, Kane and Hybris were to assist with transitioning the Chestnut Facilities to "a new operator and/or tenant."[17] On January 7 and 8, 2016, Encore replaced Accomplish as the therapy services provider under the TSAs.[18]

On February 1, 2016, Encore began providing therapy services at the Chestnut Facilities.[19] On February 29, 2016, CCP[20] and Chestnut executed a Transition and Settlement Agreement (the "Transition Agreement") whereby the management of the Chestnut Facilities would be transferred to new operators.[21] In March of 2016, after the management transition, Encore continued to perform services at the Chestnut Facilities under the new operators Northern Hills and Wachusetts.[22]

---

[16]    Def.'s Mot. Ex. 7 at 89:5-91:22; *see also* Def.'s Mot. Ex. 2 at KANE0002134.
[17]    Def.'s Mot. Ex. 9 at KANE0002096 at "Cooperation."
[18]    Def.'s Motion Ex. 13 at 105:19-106:3.
[19]    Def.'s Mot. Ex. 18 at ENCORE0000584.
[20]    The previous landlord of the facilities, Ventas, assigned its rights under its leases with the Chestnut Facilities to CCP. Def.'s Mot. Ex. 1 at Recital C.
[21]    Def.'s Mot. Ex. 2 at § 7. The Transition Agreement contains a waterfall provision that describes the manner in which all available funds would be disbursed by CCP through a waterfall provision, beginning first with payroll and then to "Critical Vendors." *Id.* at § 8.
[22]    Def.'s Mot. Ex. 15 at 98:3-102:2.

### 3. *Encore Invoices the Chestnut Facilities for February Services*

Encore first invoiced the Chestnut Facilities in the amount of $670,156.32 for services performed in February on or about March 1, 2016.[23] The invoicing took place after the operations were formally transferred and after CCP took control of Chestnut's bank accounts and assets under the terms of the Transition Agreement.[24]

### B. Procedural Posture

Encore filed its initial complaint on March 31, 2017.[25] Kane, the Airamid entities, and Deborah Howe, a co-defendant whose claims have since been dismissed from the case, filed a motion to dismiss the complaint on June 19, 2017.[26] On November 11, 2017, Judge LeGrow dismissed the breach of contract and unjust enrichment claims against Kane and the Airamid entities.[27] The only claim that remains against the moving defendants is tortious interference with contractual relations. On August 5, 2020, Encore moved to the amend the complaint.[28] The Court denied Encore's motion on August 26, 2020.[29]

---

[23] *See* Def.'s Mot. Ex 19 at ENCORE000635; *see also* Compl. ¶ 41.
[24] Def.'s Mot. Ex. 6 at 148:8-153:15; Ex. 7 at 139:17-142:13, 150:2-151:1; *see also* Def.'s Mot. Ex. 2.
[25] *See* Dkt. 1.
[26] *See* Dkt. 29.
[27] *See* Dkt. 79.
[28] *See* Dkt. 158
[29] *See* Dkt. 161.

The moving defendants filed for summary judgment on October 30, 2020.[30]

Oral argument was held on December 15, 2020.[31] On March 15, 2021, the Court

directed the parties to provide further briefing on the alleged breach of contract.[32]

The parties completed supplemental briefing on April 16, 2021.

## II.    Analysis

Kane and the Airamid entities have moved for summary judgment pursuant

to Superior Court Rule of Civil Procedure 56(c).  If there are no genuine, material

issues of fact, a party may obtain summary judgment if it is entitled to judgment as

a matter of law.[33]  "The role of a trial court ... is to identify disputed factual issues

whose resolution is necessary to decide the case, but not to decide such issues.  In

discharging this function, the court must view the evidence in the light most

favorable to the non-moving party."[34]  That said, "the non-moving party may not

rely on allegations or denials in the pleadings to create a material factual dispute."[35]

"Once the moving party presents evidence that if undisputed would entitle it to

summary judgment, the burden then shifts to the opposing party to dispute the facts

---

[30]    Dkt. 170.

[31]    Dkt. 179.

[32]    *See* Dkt. 187.

[33]    Super. Ct. Civ. R. 56(c).

[34]    *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99 (Del. 1992) (citation omitted).

[35]    *Agiliance, Inc. v. Resolver SOAR, LLC*, 2019 WL 343668, at *2 (Del. Ch. Jan. 25, 2019) (citing *Fike v. Ruger*, 754 A.2d 254, 260 (Del. Ch. 1999), *aff'd*, 752 A.2d 112 (Del. 2000)).

by affidavit or proof of similar weight."[36] "Factual disputes that are immaterial as a matter of law will not preclude summary judgment."[37]

Encore's only remaining claim against defendants is for tortious interference with contractual relations. Specifically, Encore alleges that the moving defendants tortiously interfered with the TSAs by causing Chestnut to withhold payment to Encore for its services. Under Delaware law, the elements of a claim for tortious interference are: "(1) a contract, (2) about which defendant knew, and (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury."[38] Here, the critical question is whether any of the moving defendants committed an intentional act that was a significant factor in causing the breach of the TSAs. Defendants move for summary judgment on the ground that Encore is unable to meets its burden regarding this element.[39]

---

[36] *Fleet Fin. Group, Inc. v. Advanta Corp.*, 2001 WL 1360119, at *1 n.4 (Del. Ch. Nov. 2, 2001).

[37] *WaveDivision Holdings, LLC v. Highland Cap. Mgmt., L.P.*, 49 A.3d 1168, 1175 (Del. 2012).

[38] *Bhole, Inc. v. Shore Invs., Inc.*, 67 A.3d 444, 453 (Del. 2013) (citing *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 992 (Del. Ch. 1987)).

[39] Kane and the Airamid entities have also moved for summary judgment on the ground that Encore cannot meet its burden under the fourth element of tortious interference. For the reasons discussed below, the Court finds that Encore does not meet its burden to prove the third element of tortious interference with contractual relations, and will not address the fourth element. Additionally, though not the focus of the Court's decision, the Court observes that it has not, as a matter of law, ruled that an underlying breach of contract occurred, another required element for a

The defendants argue that Encore has not satisfied the third element of a claim for tortious interference because it failed to provide any evidence disputing either that: (1) Kane was acting pursuant to its contractual obligations with CCP; and (2) that it has not provided *any* evidence that the defendants' actions were a significant factor that resulted in a failure of payment to Encore under the TSAs on behalf of either CCP or Chestnut.

Encore, in opposition, claims that several of defendants' actions constituted intentional acts that were a significant factor in causing a breach of the TSAs, namely that: (1) "[d]efendants improperly paid themselves, Accomplish Therapy, and other affiliated entities over $900,000.00 from Chestnut's accounts"[40] (2) they "also failed to secure a draw from the Chestnut credit line to satisfy Chestnut's debts to Plaintiff a critical vendor under the [Transition Service Agreement]"[41] (3) "Kane quietly altered the budget figures on the evening of February 29 to improperly reflect $900,000.00 of payments for physical therapy services"[42] and (4) that the defendants "refused to respond to Plaintiff's repeated requests for information and assistance with payment of its invoices."[43]

---

tortious interference with contractual relations claim. *See, e.g.*, *Choupak v. Rivkin*, 2015 WL 1589610, at *20 (Del. Ch. Apr. 6, 2015), *aff'd*, 129 A.3d 232 (Del. 2015) (" Because there was no underlying breach, there was no tortious interference.")

[40]    Pl.'s Opp. at 17.
[41]    *Id.* at 18.
[42]    *Id.* at 19.
[43]    *Id.* at 20.

These facts, however, prove to be immaterial for purposes of proving the "intentional act" element of tortious interference on a summary judgment motion. Under the TSAs, the earliest a breach could have occurred was May 1, 2016, as invoice payments were due 60 days after submission.[44] The defendants observe that "Encore has proffered no facts to suggest that either the February 29, 2016 payments caused CCP to breach the Encore contracts by May 1, or that Kane acted outside its role as the back-office accounting provider."[45]

The Court agrees—viewing the record in the light most favorable to Encore, there is *nothing* direct or circumstantial that shows that any of the moving defendants' actions resulted in a breach of contract by either CCP or Chestnut on May 1, 2016. Instead, the record amounts to speculative allegations regarding defendants' conduct.[46] The record is curiously devoid of any discovery from CCP,[47] a non-party who is central to Encore's tortious interference claim, and without demonstrating any connection between the alleged breach by either CCP or Chestnut and the moving defendants' actions, Encore has not proffered evidence from which

---

[44] Compl. ¶ 42.

[45] Defendants' Reply Brief in Support of their Motion for Summary Judgment ("Def.'s Reply") at 9.

[46] *See Benefits Plus v. Mid-Atl. Health Sys., Inc.*, 862 A.2d 385 (Del. 2004) (affirming grant of summary judgment because party presented unsupported allegations and did not offer evidence to prove its claims or show a genuine dispute of material fact).

[47] At oral argument, plaintiff's counsel conceded that it was possible that discovery could have been taken from CCP.

any rational trier of fact could infer that it has proven the prima facie elements of its case.

### III. Conclusion

For the foregoing reasons, the moving defendants' motion for summary judgment is granted.

**IT IS SO ORDERED.**

_Meghan A. Adams, Judge_

cc:     Prothonotary