BHOLE, INC., Outlet Liquors, LLC, Highway I Limited Partnership, Kiran Patel, and Alexander J. Pires, Jr., Defendants Below, Appellants,

v.

SHORE INVESTMENTS, INC., Plaintiff Below, Appellee.

No. 305, 2012.

Supreme Court of Delaware.

Submitted: March 13, 2013.

Decided: June 11, 2013.

Stephen W. Spence (argued), Stephen A. Spence, and Aaron C. Baker, Esquires, of Phillips, Goldman & Spence, P.A., Wilmington, Delaware; for Appellants.

John A. Sergovic, Jr. (argued), Elizabeth L. Soucek, Esquires, of Sergovic, Carmean & Weidman, P.A., Georgetown, Delaware; for Appellee.

Before STEELE, Chief Justice, JACOBS and RIDGELY, Justices.

JACOBS, Justice:

## INTRODUCTION

In a so-called "efficient breach," a tenant terminated a commercial lease before the end of the lease term. The lease agreement did not contain an acceleration clause. Before the lease term expired, the landlord brought a Superior Court action to recover the entire unpaid rent for the balance of the lease period. We hold that, although the tenant breached the lease, the court erred by not considering that the lease had no acceleration clause. As a consequence, the trial court's award of contract damages and its award of attorney's fees, must be reversed and remanded to the Superior Court for redetermination. The Superior Court also upheld the landlord's separate claim for tortious interference with its lease, and awarded it punitive damages. We reverse the tortious interference determination and the award of punitive damages, and remand the case for further proceedings in accordance with this Opinion.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

Shore Investments, Inc., the landlord and plaintiff-below ("Shore"), owns a 4400–square–foot commercial building located at 4313 Highway One, Rehoboth Beach, Delaware (the "Old Store"). In 2004, Shore entered into a contract leasing the Old Store to Bhole, Inc., the original tenant ("Bhole"), for use as a liquor store (the "Lease"). At that time, Bhole's president and sole shareholder was Kiran Patel ("Patel"), who was later named as a co-Defendant in this action. The Lease term ran from August 31, 2004 to August 31, 2011, with an option to renew for an additional seven years. Rent was payable in monthly installments on the first of every month. Importantly, the Lease did not have an acceleration clause, i.e., a provision that any unpaid rent for the balance of the Lease term would become immediately due and payable if the tenant breached the contract.

In November 2008, co-Defendant Alexander J. Pires, Jr. ("Pires") decided to operate a liquor store in Rehoboth Beach. Pires is the managing partner of Highway

I Limited Partnership ("Highway I"), an entity that is the sole owner of Outlet Wines, LLC, which was later renamed Outlet Liquors, LLC ("Outlet Liquors").[1] To accomplish that goal, Pires caused Outlet Wines to purchase Patel's stock ownership interest in Bhole. Pires then caused Bhole to apply to the Delaware Alcoholic Beverage Control Commission ("DABCC") to transfer Bhole's liquor license from the Old Store to a larger, 20,500–square–foot building.[2] That building, which was purchased from The Salvation Army (the "Salvation Army Building"), was owned by Highway I, and was located adjacent to the Old Store.

On April 7, 2009, after the DABCC approved Bhole's application, Pires transferred Bhole's entire liquor store operation from the Old Store to the Salvation Army Building. On April 30, 2009, Pires caused Bhole to merge into Outlet Wines, which (as earlier noted) changed its name to Outlet Liquors. The consequence of these transactions is that Pires caused his entities to: (i) purchase Bhole and its business, (ii) assume Bhole's obligations under the Lease with Shore, and (iii) transfer Bhole's liquor store operation from the Old Store to the Salvation Army Building.

Despite having moved the liquor store to a different location, Pires did not terminate the Lease. He caused his entities to continue paying rent to Shore for five additional months, until early September 2009. At that point, Pires terminated the Lease by surrendering the keys to the Old Store to Shore's president, T. Theodore Jones ("Jones"). Mr. Jones then attempted (unsuccessfully) to negotiate with two potential tenants to relet the Old Store. From February 2010 through March 2011, Jones also listed the property with a commercial real estate company. Jones was, however, unable to secure a tenant for the balance of the Lease term, i.e., for the period from early September 2009 (when the Defendants breached the Lease) to August 31, 2011 (when the Lease expired).

## II. Procedural Background

After the Defendants breached the Lease, but almost two years before the Lease expired, Shore filed this action in Superior Court against the Defendants on September 10, 2009. Shore alleged claims of breach of contract, tortious interference with the Lease, and tortious interference with its prospective business expectations. Shore sought contract damages, punitive damages, and attorney's fees and related court costs.

After a May 7–8, 2011 bench trial, the Superior Court issued a letter opinion on November 28, 2011.[3] The court held that Bhole had breached the Lease by failing to operate a liquor store continuously in the Old Store for the entire Lease term.[4] The court ruled that moving the liquor store operation to the Salvation Army Building in April 2009 constituted a clear breach of the Lease,[5] that the breach was material, and that Bhole's continuing to make rental

1. Bhole, Patel, Pires, Highway I, and Outlet Liquors are referred to collectively as the "Defendants" in this Opinion.

2. Jones objected to Pires' application to the DABCC and unsuccessfully sought an injunction in the Court of Chancery that would have prohibited the transfer of Bhole's liquor license. Shore Invs., Inc. v. BHole, Inc., 2009 WL 2217744 (Del.Ch. July 14, 2009).

3. Shore Invs., Inc. v. Bhole, Inc., 2011 WL 5967253 (Del.Super. Nov. 28, 2011).

4. Id. at *4.

5. Id. at *5.

payments until September 2009 did not excuse the breach.[6]

The court also found that Shore had made a reasonable effort to mitigate its damages post-breach by entering into discussions with two prospective tenants and by listing the property with a commercial real estate company.[7] As a result, the court held, the measure of Shore's contract damages was the unpaid rent for the balance of the Lease term (*i.e.*, from October 1, 2009 through August 31, 2011).[8] In its first letter opinion, the court specifically held Bhole and Outlet Liquors liable for those contract damages.[9]

The court also upheld Shore's claim for tortious interference with the Lease.[10] The Defendants justified their conduct as reasonable competition with Shore in operating a liquor store. The court found, however, that "Shore and the [D]efendants were not in competition with each other in the marketplace," because "Shore is in the business of leasing out its building to tenants.... [whereas] [t]he [D]efendants are ... in the business of operating a large liquor store."[11] Therefore, the Superior Court concluded, although the Defendants tortiously interfered with the Lease, no consequential damages were separately awardable on that basis, because the parties were engaged in different businesses.[12] But, because the Defendants had "inten-

tionally and willfully caused Bhole to breach its lease by moving the liquor store from the [Old Store] to the Salvation Army [B]uilding,"[13] the court awarded Shore $25,000 in punitive damages against Pires, Highway I, and Outlet Liquors, jointly and severally.[14]

The court, however, declined to award damages to Shore on its tortious interference with its prospective business expectations claim,[15] because Shore had no reasonable expectation that Bhole would renew its Lease after the original Lease term expired.[16] The court reasoned that Shore "certainly had to know" that the Defendants would not renew the Lease once the liquor store operation was moved from the Old Store to the Salvation Army Building.[17]

Given the Lease terms, and Shore's success in establishing its breach of contract claim, the Superior Court held that Shore was also entitled to recover its attorney's fees and costs, plus pre—and post-judgment interest, from Bhole.[18] In a second letter opinion issued on April 9, 2012, the court then determined the amount of the attorney's fee award,[19] but held that only Bhole and Outlet Liquors were liable therefor.[20]

The court issued its final order on May 7, 2012. In its order and judgment, the

6. *Id.* at *5, *7.

7. *Id.* at *9.

8. *Id.* at *9–10.

9. *Shore Invs., Inc. v. Bhole, Inc.*, 2011 WL 5967253, at *16 (Del.Super. Nov. 28, 2011).

10. *Id.* at *13.

11. *Id.*

12. *Id.*

13. *Id.* at *14.

14. *Id.* at *14, *16.

15. *Shore Invs., Inc. v. Bhole, Inc.*, 2011 WL 5967253, at *15 (Del.Super. Nov. 28, 2011).

16. *Id.*

17. *Id.*

18. *Id.* at *13.

19. *Shore Invs., Inc. v. Bhole, Inc.*, 2012 WL 2337793 (Del.Super. Apr. 9, 2012).

20. *Id.* at *3.

court: (i) found no liability against Patel; (ii) held that Highway I, Outlet Liquors, and Pires were jointly and severally liable for all unpaid rent, plus pre—and post-judgment interest, for the period from October 1, 2009 to the expiration of the Lease on August 31, 2011; (iii) awarded punitive damages against those three Defendants; (iv) found that the Defendants had not tortiously interfered with Shore's business expectations; and (v) held Bhole and Outlet Liquors liable for Shore's attorney's fees and court costs.

All parties have appealed to this Court from that final order and judgment.

## ANALYSIS

Because the parties advance distinct claims on their respective appeal and cross-appeal, we address those claims separately. On their appeal, the Defendants contest the Superior Court's determinations of: (i) breach of contract damages, (ii) tortious interference with the Lease, and (iii) punitive damages. On its cross-appeal, Shore challenges the court's rulings: (i) rejecting its claim of tortious interference with its business expectations, (ii) declining to impose a damages award against Patel, and (iii) awarding it inadequate attorney's fees and punitive damages.

These claims raise issues of contract interpretation. They also contest the trial court's formulation and application of legal principles. We review both sets of claims

*de novo.*[21] We review the court's factual findings to determine if they are sufficiently supported by the record, and will not disturb those findings unless they are clearly erroneous.[22] We review its damages award for abuse of discretion.[23]

## I. The Defendants' Claims on Appeal

### A. Breach of Contract Damages

The principal issue on the Defendants' appeal is whether the Superior Court correctly determined Shore's breach of contract damages.[24] The Defendants claim that the trial court erred because it awarded damages as if the Lease contained an acceleration clause, thus failing to take into account the absence of any such provision in the Lease. Defendants further claim that the court improperly found that Shore had mitigated its damages, post-breach. We address those claims first.

### 1. No Acceleration Clause in the Lease

■ It is undisputed that the Lease has no acceleration clause—a fact that the trial court did not acknowledge, or address, from a legal standpoint in its letter opinions or its final order.[25] The significance of the absence of an acceleration clause, Defendants argue, is that Shore can recover only the unpaid rent that was due at the time of trial. We agree that the trial court erred by failing to address the absence of an acceleration clause. Less clear, however, is the legal consequence of that error.

21. *Gatz Props., LLC v. Auriga Capital Corp.,* 59 A.3d 1206, 1212 (Del.2012) (citation omitted); *Genger v. TR Investors, LLC,* 26 A.3d 180, 190 (Del.2011).

22. *Genger,* 26 A.3d at 190; *Levitt v. Bouvier,* 287 A.2d 671, 673 (Del.1972).

23. *William Penn P'ship v. Saliba,* 13 A.3d 749, 758 (Del.2011).

24. The parties do not dispute that the Defendants breached the lease. On this claim, they disagree about only the proper measure of damages adequate to remedy the breach of contract.

25. Although the trial court did not address the issue, the parties fairly presented it both before the trial court and on appeal. Shore's contention that the Defendants waived this acceleration clause issue is incorrect.

Specifically, it is unsettled whether, absent an acceleration clause, a non-breaching party is entitled to recover the unpaid rent due up through either the time of: (i) the filing of the lawsuit, *or* (ii) the trial, *or* (iii) the court's decision and/or judgment.

The legal issue is what the measure of recovery is for a breach of a lease agreement, where (i) the non-breaching party has sued before the lease expires, and (ii) the lease does not contain an acceleration clause. That issue is one of first impression in this Court.[26] In these circumstances, courts in some jurisdictions hold that the non-breaching party may recover all unpaid rent up to the date the complaint was filed.[27] Other courts have ruled that the recovery may include unpaid rents up to the date of trial.[28] And, one second-

**26.** Although our Court has not addressed this issue, the Superior Court previously addressed this issue in *SLMSoft.com, Inc. v. Cross Country Bank*, 2003 WL 1769770, at *7 & n. 54 (Del.Super. Apr. 2, 2003) (quoting 1 Am.Jur.2d *Actions* § 117 (1994), since renumbered as 1 Am.Jur.2d *Actions* § 110 (2013)) (internal quotation marks omitted) ("In a contract that lacks an acceleration clause, and requires money to be paid in installments, each failure of remittance is, itself, an individual breach. All installments due when an action is commenced should be sought, for generally speaking, a recovery for one installment will bar an action for the recovery of other installments which were due and which could have been sued upon at the same time.").

**27.** *See, e.g., AboveNet Comm'ns, Inc. v. A & D Data Corp.*, 2010 WL 235005, at *5 (S.D.N.Y. Jan. 19, 2010) (citation omitted) (noting that, "[a]s a general matter, the New York courts have held that if the injured party seeks relief for the breach of a contract calling for periodic payments over time, absent an acceleration provision he may recover only those payments that the defendant had failed to make as of the time of the filing of the lawsuit."); *Mayes v. Matthews*, 2011 WL 5964615, at *4 (Mich.App. Nov. 29, 2011) (citation omitted) ("In the absence of an acceleration clause, ... the court may decree as due any past due amounts that have not yet been paid at the time the action is commenced."); 1 Am. Jur.2d *Actions* § 110 (2013) (citations omitted) ("A contract to pay money in installments is divisible, and so each default in the payment of an installment may be the subject of an independent action, provided it is brought before the next installment becomes due. A court cannot award judgment for an installment payment not due at the time of entry of judgment; recovery for such payments must

be had in a separate action. However, all installments due at the time an action is commenced should be sued upon unless special circumstances exist, for generally speaking, a recovery for one installment will bar an action for the recovery of other installments which were due and which could have been sued upon at the same time. Where the contract contains an acceleration clause under which all installments become due and payable upon a single default, any recovery under the contract for default must be had in a single action."); 49 Am.Jur.2d *Landlord and Tenant* § 642 (2013) (citations omitted) ("In the absence of an acceleration clause, no suit can be brought for future rent. A lessor has the options of suing for rent installments as they come due, suing for several accrued installments, or suing for the entire amount at the end of the lease term.").

**28.** *See, e.g., AAR Int'l, Inc. v. Vacances Heliades S.A.*, 349 F.Supp.2d 1114, 1116 (N.D.Ill.2004) (citation omitted) (holding under Illinois law that "[i]n the absence of an acceleration clause, recovery for breach of lease is limited to the amount due at the time of trial."); *Onal v. B.P. Amoco Corp.*, 275 F.Supp.2d 650, 669–71 (E.D.Pa.2003) (internal citations omitted) (holding under Pennsylvania law that "absent an acceleration clause, a Pennsylvania landlord, provided that he remains out of possession, may collect rents only in installments as they accrue.... Therefore, [the landlord] is entitled to collect only those rents and other payments that had accrued under the lease as of the time of trial."); *Maudlin v. Pac. Decision Scis. Corp.*, 137 Cal. App.4th 1001, 1018, 40 Cal.Rptr.3d 724, 736 (2006) (internal citations omitted) (holding that, under California law, in the absence of an acceleration clause, plaintiff-retired employee who sued employer for monthly deferred compensation payments "may recover

ary source suggests that all unpaid rent up to the entry of judgment might be recoverable.[29] Because the Superior Court did not address any of these alternatives, we must remand for the court to decide this question in the first instance.

The choice of one of these three alternatives has important implications. If the rule of law were that breach-of-lease damages is calculated up to the time of *the filing of the lawsuit*, then the Defendants would not be liable for any damages, since Shore filed this action on September 10, 2009, and rent was paid through the end of September 2009. If, on the other hand, the rule were that damages include all unpaid rent through *the time of the trial*, then the Defendants would be liable for all unpaid rent from October 1, 2009 through March 31, 2011. And, if the rule were that damages include all unpaid rent up to *the date of either the court's November 28, 2011 letter opinion or its May 7, 2012 final order*, then the Defendants would be liable for all unpaid rent up to the Lease expiration date of August 31, 2011. Thus, depending on the measure of contract damages recoverable in the absence of an acceleration clause, the Defendants would be liable for either: (i) no contract damages, *or* (ii) unpaid rent from October 1,

2009 through March 31, 2011, *or* (iii) unpaid rent from October 1, 2009 through August 31, 2011. On remand, the Superior Court shall decide which is the appropriate legal consequence.

### 2. Mitigated Damages

■ The Defendants next claim that Shore did not properly mitigate its damages from February 2010 through the expiration of the Lease in March 2011, and that the Superior Court erred by holding otherwise. During that period, the Defendants argue, all Shore did was list the Old Store with a commercial real estate company, but otherwise, it took no other steps to relet the property. That (the Defendants urge) did not constitute a "reasonable effort" to mitigate its damages.

The Superior Court concluded that Shore's listing of the Old Store with the commercial real estate company was sufficient to mitigate its damages, given the lackluster economic climate at that time.[30] We conclude that the current record regarding Shore's mitigation efforts is too sparse for an informed appellate review. On remand, the Superior Court shall direct the parties to augment the record on the issue of whether Shore made a "reasonable

all payments that are owed through the time of trial, but must await default on the future installments before bringing an action for nonpayment"); *Boonville Convalescent Ctr., Inc. v. Cloverleaf Healthcare Servs., Inc.*, 834 N.E.2d 1116, 1126–27 (Ind.App.2005) (holding that, in the absence of an acceleration clause, landlord "cannot recover for rental obligations not yet due at the date of trial"); *Klosterman v. Hickel Inv. Co.*, 821 P.2d 118, 125 (Alaska 1991) (holding that in the absence of an acceleration clause, a breaching tenant must pay "the rent accrued at the time of trial, taking into account revenue received by [a landlord] from its subsequent reletting of the premises. Then, in future months, [the tenant] must pay any monthly deficiency between [the tenant's] rental obligation and the

revenue received from [the landlord's] mitigation of its damages.").

29. *See* 1 Am Jur.2d *Actions* § 110 (2013) ("A court cannot award judgment for an installment payment not due at the time of entry of judgment; recovery for such payments must be had in a separate action. However, all installments due at the time an action is commenced should be sued upon unless special circumstances exist, for generally speaking, a recovery for one installment will bar an action for the recovery of other installments which were due and which could have been sued upon at the same time.").

30. *Shore Invs., Inc. v. Bhole, Inc.*, 2011 WL 5967253, at *9 (Del.Super. Nov. 28, 2011).

effort[ ]" to mitigate its damages during the relevant time period.[31]

### 3. Which Defendants Are Liable For Breaching the Lease?

■ We next address which of the Defendants is properly liable under the Lease for breach of contract damages (should any be recoverable). In its November 28, 2011 letter opinion, the trial court concluded that:

> On Shore's breach of lease claim, I award Shore [the unpaid rent for the Lease term]. I also award Shore its attorneys' fees, the costs of this action and pre- and post-judgment interest at the applicable rate. *The responsible defendants are Bhole, Inc. and Outlet Wines, LLC,* which became responsible for Bhole's obligations by merging with it.[32]

We read that opinion as holding only Bhole and Outlet Liquors liable for both the breach of contract damages and attorney's fees. In its May 7, 2012 final order, however, the Superior Court then directed that "[t]he [D]efendants, *Outlet Liquors, LLC* (successor-by-merger with Bhole, Inc.), *Highway I Limited Partnership, and Alexander J. Pires, Jr.* are jointly and severally liable for [the unpaid rent for the Lease term]." [33] This unexplained discrepancy between the court's November 28, 2011 letter opinion and its May 7, 2012 final order, requires us independently to consider which Defendants are properly liable in damages for breaching the Lease.

We conclude that only Bhole (as a contracting party to the Lease) and Outlet Liquors (as successor-by-merger to Bhole) are liable for whatever contract damages (if any) are awardable.[34] To the extent that the trial court held that Highway I (as the parent corporation of Outlet Liquors) and Pires (as the managing partner of Highway I) were also liable, the court erred because neither Defendant was a party to the Lease or assumed liability thereunder.[35]

---

31. *See Parks v. John Petroleum, Inc.,* 16 A.3d 938, 2011 WL 1376275, at *2–3 (Del. Apr. 12, 2011) (TABLE).

32. *Shore Invs., Inc.,* 2011 WL 5967253, at *16 (italics added).

33. Italics added.

34. *See* 8 *Del. C.* § 259(a); *Fitzsimmons v. W. Airlines, Inc.,* 290 A.2d 682, 685 (Del.Ch. 1972) (internal quotations omitted) ("It is ... a matter of statutory law that a Delaware corporation may not avoid its contractual obligations by merger; those duties attach to the surviving corporation and may be enforced against it. In short the survivor must assume the obligations of the constituent.").

35. Highway I (as the parent corporation of Outlet Liquors) *cannot be found* liable, because Shore did not plead any facts to support piercing the corporate veil. Nor would the Superior Court have had jurisdiction over a veil-piercing claim. *See Sonne v. Sacks,* 314 A.2d 194, 197 (Del.1973) ("In our opinion, piercing the corporate veil may be done only

in the Court of Chancery...."); *BASF Corp. v. POSM II Props. P'ship, L.P.,* 2009 WL 522721, at *8 n. 50 (Del.Ch. Mar. 3, 2009) (citation omitted) ("To pierce a corporate veil, a plaintiff must show that the interests of justice require it because matters like fraud, public wrong, or contravention of law are involved."). And, in any event, no basis for piercing the corporate veil on these facts has been claimed or shown. Nor does the record support any claim that Outlet Liquors acted as an "agent" of Highway I. *See O'Leary v. Telecom Res. Serv., LLC,* 2011 WL 379300, at *7 (Del.Super. Jan. 14, 2011); *Stinnes Interoil, Inc. v. Petrokey Corp.,* 1983 WL 21115, at *2 (Del.Super. Aug. 24, 1983).

Because Highway I is not liable, neither is its managing partner, Pires. Despite having caused Outlet Wines (later renamed Outlet Liquors) to purchase Bhole's assets, Pires never personally bound himself to the Shore–Bhole lease. *See Wallace ex rel. Cencom Cable Income Ptrs. II v. Wood,* 752 A.2d 1175, 1180 (Del.Ch.1999) (citations omitted) ("It is a general principle of contract law that only a

## B. Tortious Interference with the Lease

■ The second issue raised by the Defendants is whether the Superior Court properly found that Highway I, Outlet Liquors, and Pires had tortiously interfered with Shore's rights under the Lease. Under Delaware law, the elements of a claim for tortious interference with a contract are: "(1) a contract, (2) about which defendant knew, *and* (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury."[36] To establish tortious interference with contract rights by a defendant corporation, the non-breaching party must show that the corporate defendant "was not pursuing in good faith the legitimate profit seeking activities of [its] affiliated enterprise[]" that was a party to the contract.[37] Moreover, "there can be no non-contractual liability of the affiliated corporation ... unless the plaintiff pleads and proves that the affiliate sought not to achieve permissible financial goals but sought maliciously or in bad faith to injure plaintiff."[38] Thus, to establish a

tortious interference with its Lease, Shore must show that Highway I, Outlet Liquors, and Pires, acted maliciously or in bad faith.[39]

■ The trial court erred for two reasons. First, it is "rudimentary that a party to a contract cannot be liable both for breach of [a] contract and for inducing that breach."[40] As we have held, only Bhole and Outlet Liquors—but not Highway I or Pires—breached the Lease. After Bhole merged into Outlet Liquors, Outlet Liquors efficiently breached the Lease with Shore in order to maximize its profits by operating a large liquor store out of the Salvation Army Building instead of a small liquor business out of the Old Store. Having directly breached the Lease, Outlet Liquors cannot be held simultaneously liable for tortiously interfering with that same Lease.[41]

■ Second, neither Highway I nor Pires can be held liable for tortious interference, because there is no evidence that they interfered with the Lease maliciously or in bad faith. Because none of the De-

---

party to a contract may be sued for breach of that contract. Indeed, Delaware law clearly holds that officers of a corporation are not liable on corporate contracts as long as they do not purport to bind themselves individually.").

36. *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 992 (Del.Ch.1987) (italics added).

37. *Shearin v. E.F. Hutton Grp., Inc.*, 652 A.2d 578, 591 (Del.Ch.1994).

38. *Id.*

39. The doctrine of efficient breach also impacts the merits of Shore's claim of tortious interference with its Lease. The principle of efficient breach dictates that "properly calculated expectation damages increase economic efficiency by giving the other party an incentive to break the contract if, but only if, he

gains enough from the breach that he can compensate the injured party for his losses and still retain some of the benefits from the breach." *E.I. DuPont de Nemours and Co. v. Pressman*, 679 A.2d 436, 445–46 (Del.1996) (quoting *Restatement (Second) of Contracts*, Reporter's Note to Introductory Note to Ch. 16, Remedies) (internal quotation marks omitted). Delaware recognizes this principle of efficient breach. *NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, at *35 (Del.Ch. Dec. 22, 2009). Where a party efficiently breaches a contract, the typical measure of damages is a non-breaching party's "expectation" interest. *E.I. DuPont de Nemours and Co.*, 679 A.2d at 445 (citing *Restatement (Second) of Contracts* § 347 (1981)).

40. *Shearin*, 652 A.2d at 590.

41. The record, in any event, does not support a tortious interference claim against Outlet Liquors.

fendants interfered with the Lease tortiously, the Superior Court's judgment upholding that claim must be reversed.

### C. Punitive Damages

■ Finally, the Defendants contest the Superior Court's award of punitive damages. "[P]unitive damages are not recoverable for breach of contract unless the conduct also amounts independently to a tort."[42] We have determined that no Defendant committed any tort against Shore. Accordingly, there is no legal basis to award punitive damages. The judgment awarding punitive damages must therefore be reversed.

## II. Shore's Claims on Cross–Appeal

### A. Tortious Interference with Business Expectations

■ On cross-appeal, Shore claims that the Superior Court erred by denying its claim for tortious interference with its (prospective) business expectations. Shore argues that it had a reasonable business expectation that the Defendants would renew the Lease for an additional seven-year term after the original Lease expired. The Superior Court disagreed.[43] The court reasoned that Shore "certainly had to know" that the Defendants would not renew the Lease once they transferred the liquor store from the Old Store to the Salvation Army Building before the original Lease terminated.[44] We agree, and affirm the Superior Court's judgment rejecting this claim.

### B. Patel's Liability

Shore next contends that, after having issued a default judgment against Patel, the Superior Court should then have assessed contract and tort damages against him. The court declined to do that because:

> Even though Shore obtained a default judgment against Kiran Patel, [the court does] not assess[ ] any damages against him because ... he did not conspire with the other tenants to breach Bhole's lease. There was simply no evidence indicating that he was a part of the other defendants' plan to gain control of Bhole and move the liquor store to the Salvation Army building in violation of its lease with Shore.[45]

We agree that Patel cannot be held individually liable for damages on any tenable legal ground, and therefore affirm the judgment rejecting Shore's claim against Patel.

### C. Attorney's Fees and Punitive Damages

Lastly, Shore contends that the awards of attorney's fees and punitive damages were inadequate. Because we hold that the court's rulings on the breach of contract and tortious interference claims were legally erroneous, the award of punitive damages must be reversed. We further hold that on remand the attorney's fee award for Shore must be reconsidered and appropriately reduced.

### CONCLUSION

For the reasons stated, the judgment of the Superior Court is affirmed in part and

**42.** *E.I. DuPont de Nemours and Co.*, 679 A.2d at 445 (citing *Restatement (Second) of Contracts* § 355 (1981)).

**43.** *Shore Invs., Inc. v. Bhole, Inc.*, 2011 WL 5967253, at *15 (Del.Super. Nov. 28, 2011).

**44.** *Id.*

**45.** *Id.* at *16.

reversed in part, and the case is remanded for further proceedings consistent with the rulings in this Opinion. Jurisdiction is not retained.