## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN RE P3 HEALTH GROUP
HOLDINGS, LLC

)      Consol. C.A. No. 2021-0518-JTL
)

## ORDER DENYING MOTION BY FORESIGHT ACQUISITION CORP., FORESIGHT ACQUISITION CORP. II, AND GREG WASSON TO DISMISS COUNT XI

1. Hudson Vegas Investment SPV, LLC ("Hudson") was a minority investor in P3 Health Group Holdings, LLC (the "Company"). In this litigation, Hudson has asserted various claims based on a transaction between the Company and a special purpose acquisition company, commonly known as a SPAC.

2. The defendants filed a surfeit of motions to dismiss on various grounds, including Rule 12(b)(6). The court has issued a decision addressing the breach of contract claims that Hudson asserted. Dkt. 172 (the "Contract Opinion," cited as "Op."). This order incorporates that decision by reference.

3. In Count XI of its complaint, Hudson has asserted a claim against Foresight Acquisition Corp. ("Foresight"), Foresight Acquisition Corp. II ("Foresight II"), and Greg Wasson for tortiously interfering with Hudson's contractual rights.

4. Delaware has adopted the formulation of a claim for tortious interference with contract that appears in the Restatement (Second) of Torts. *WaveDivision Hldgs., LLC v. Highland Cap. Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012); *ASDI, Inc. v. Beard Rsch., Inc.*, 11 A.3d 749, 751 (Del. 2010). Generally speaking, "[o]ne who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract, is

subject to liability to the other." Restatement (Second) of Torts § 766 (Am. L. Inst. 1979), Westlaw, (database updated Oct. 2022). Reframed as elements, a plaintiff must plead "(1) a contract, (2) about which defendant knew, *and* (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury." *Bhole, Inc. v. Shore Invs., Inc.*, 67 A.3d 444, 453 (Del. 2013) (internal quotation marks omitted).

5.      The Contract Opinion has found that Hudson has stated claims for breach of contract and that Hudson suffered injury. *See* Op. at 31, 41, 44, 60, 65, 74. It is reasonably conceivable that Foresight, Foresight II, and Wasson knew about the LLC Agreement and Hudson's contract rights. The debate is over elements (3) and (4).

6.      Hudson has pled that Foresight, Foresight II, and Wasson engaged in an intentional act, designed to induce breaches of contract, when Wasson offered Tolan and Kazarian the opportunity to invest in Foresight II.

a.      As described in the Contract Opinion, Chicago Pacific and the Company pursued a de-SPAC merger with Foresight, but that transaction became far less attractive to the Company in April 2021. *Id.* at 11–12.

b.      An important aspect of the de-SPAC merger was the Company's ability to raise additional financing through the PIPE. Chicago Pacific principals handled nearly every aspect of the PIPE. The letter of intent contemplated a PIPE of $400 to $500 million. *Id.* at 11.

c. In April 2021, the SPAC market began to weaken, and JPMorgan warned Chicago Pacific that the PIPE would top out at $300 to $350 million, nearly one-third less than the letter of intent contemplated. *Id.*

d. As April 2021 unfolded, the SPAC market declined further. By April 29, JPMorgan was telling Tolan that the maximum proceeds had fallen to $250 million. No one provided the information to the Board. Tolan decided to continue moving forward with the de-SPAC merger. *Id.* at 11–12.

e. To shore up Chicago Pacific's commitment to the transaction, Wasson gave Tolan and Kazarian the opportunity to invest personally in a follow-on SPAC called Foresight II. Tolan described the invitation as "an honor." *Id.* at 12. Without making any disclosure to the Board, Tolan and Kazarian accepted, and on May 7, 2021, they invested $500,000 and $100,000 in Foresight II. Based on historical rates of return to SPAC insiders, Tolan and Kazarian stood to reap nearly $9 million and $5 million, respectively, if Foresight II completed an acquisition. *Id.*

f. It is reasonably conceivable that Wasson offered Tolan and Kazarian the opportunity to invest in Foresight II to induce them to push through the transaction with Foresight, notwithstanding the violations of Hudson's contract rights.

7. The final element is the issue of justification.

a. "The tort of interference with contractual relations is intended to protect a promisee's economic interest in the performance of a contract by making actionable 'improper' intentional interference with the promisor's performance." *Shearin v. E.F. Hutton Gp.*, 652 A.2d 578, 589 (Del. Ch. 1994). "The adjective 'improper' is

- 3 -

critical. For participants in a competitive capitalist economy, some types of intentional interference with contractual relations are a legitimate part of doing business." *NAMA Hldgs., LLC v. Related WMC LLC*, 2014 WL 6436647, at \*26 (Del. Ch. Nov. 17, 2014). "[C]laims for unfair competition and tortious interference must necessarily be balanced against a party's legitimate right to compete." *Agilent Techs. v. Kirkland*, 2009 WL 119865, at \*8 (Del. Ch. Jan. 20, 2009). Determining when intentional interference becomes improper requires a "complex normative judgment relating to justification" based on the facts of the case and "an evaluation of many factors." *Shearin*, 652 A.2d at 589 (internal quotation marks omitted).

b. The Delaware Supreme Court has adopted the factors identified in Section 767 of the Restatement (Second) of Torts as considerations to weigh when evaluating the existence of justification. *WaveDivision*, 49 A.3d at 1174. The factors are:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties.

*Id.* Weighing the seven factors identified in the Restatement requires the court to engage in a fact-specific inquiry to determine whether the interference with contract is improper under the particular circumstances of the case. *See* Restatement (Second) of Torts § 767 cmt. b ("[T]his branch of tort law has not developed a crystallized set of definite rules as to the existence or non-existence of a privilege . . . . Since the determination of whether an

- 4 -

interference is improper is under the particular circumstances, it is an evaluation of these factors for the precise facts of the case before the court.").

c.      It is often difficult to assess the element of justification at the pleading stage. If it is not possible to determine at the pleading stage that the interference was justified as a matter of law, then the claim for tortious interference can proceed. *See Bandera Master Fund LP v. Boardwalk Pipeline P'rs, LP*, 2019 WL 4927053, at \*27–29 (Del. Ch. Oct. 7, 2019).

d.      In this case, it is reasonable to infer that Wasson's actions were *not* justified. It is reasonable to infer that he offered Tolan and Kazarian the equivalent of a bribe.

8.      In response, Wasson, Foresight, and Foresight II advance a technical argument based on entity separateness. They say that only the manager of Foresight II had the ability to offer an investment opportunity, and that entity is not named as a defendant. That is too cute.

a.      At the pleading stage, it is reasonable to infer that Wasson controlled Foresight and Foresight II through his family office, which sponsored both entities.

b.      At the pleading stage, it is reasonable to infer that when Wasson offered Tolan and Kazarian the opportunity to invest in Foresight II, he was not making an empty gesture. It is reasonable to infer that he actually had the ability to make good on his offer.

c.      The complaint alleges that Tolan and Kazarian actually invested in Foresight II. It is reasonable to infer that Wasson had the power to deliver and did.

- 5 -

d.    At a later stage of the case, it may be appropriate to parse the differences between entities. Hudson may even want to add another defendant based on the defendants' representation. At the pleading stage, the entity separateness argument does not warrant dismissal.

9.    Wasson, Foresight, and Foresight II also seem to suggest that Hudson must tie their actions to a specific breach. Hudson has alleged specific breaches of contract with the common theme of Chicago Pacific and its representatives pushing a transaction through for their own benefit. By offering the equivalent of a bribe to the lead representatives of a counterparty in the middle of the deal process, Wasson, Foresight, and Foresight II engaged in conduct that supports a reasonable inference that they were trying to induce precisely that outcome. At the pleading stage, on the facts of this case, Hudson is not required to tie its allegations more directly to a particular breach.

10.    Count XI states a claim on which relief can be granted against Wasson, Foresight, and Foresight II. Their motion to dismiss Count XI is denied.

/s/ J. Travis Laster
Vice Chancellor Laster
November 4, 2022

- 6 -