**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | |
|---|---|
| Limitless Coffee, LLC, and Limitless, IP, LLC | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) C.A. No. N23C-12-229 EMD CCLD |
| | ) |
| Mott's, LLP and Keurig Dr Pepper Inc., | ) |
| | ) |
| Defendants. | ) |

Submitted: June 21, 2024
Decided: September 19, 2024

*Upon Consideration of Defendants' Motion to Dismiss*
**GRANTED.**

Jared T. Green, Esq., Seitz, Van Ogtrop & Green, P.A., Christine E. Burke, Esq., Karpf, Karpf & Cerutti, P.C., Bensalem, Pennsylvania. *Attorneys for Plaintiffs.*

Brett M. McCartney, Esq., Elizabeth A. Powers, Esq., Bayard, P.A., Sarah T. Andrade, Esq., Wilmington, Delaware, Christoper Patton, Esq., Leo Park, Esq., Lynn Pinker Hurst & Schwegmann, LLP, Dallas, Texas. *Attorneys for Defendants.*

**DAVIS, J.**

## I. INTRODUCTION

This is a breach of contract action assigned to the Complex Commercial Litigation Division of this Court. Plaintiffs Limitless Coffee, LLC ("Limitless Coffee") and Limitless, IP, LLC ("Limitless IP," and together with Limitless Coffee, "Limitless") initiated this action by filing a complaint against Defendants Mott's LLP ("Mott's"), and Keurig Dr Pepper Inc. ("KDP").[1]

Limitless seeks relief relating to claims arising out of the Asset Purchase Agreement entered into on January 21, 2020 (the "APA"). Limitless asserts claims for breach of the implied

---

[1] Mott's and KDP will be collectively referred to as "Defendants."

covenant of good faith and fair dealing and breach of contract against both Defendants (Count I), and tortious interference with contractual relations and inducement of breach of contract against KDP (Count II).

Defendants have moved to dismiss the complaint (the "Motion").[2] Limitless opposes the Motion.[3] The Court held a hearing on the Motion on June 21, 2024.[4] At the end of the hearing, the Court took the Motion under advisement.

For the reasons explained below, Defendants' motion to dismiss the complaint is **GRANTED**.

## II. RELEVANT BACKGROUND

Limitless was engaged in the business of manufacturing and selling lightly caffeinated sparkling water beverages and ready-to-drink beverages.[5] On January 21, 2020, Limitless Coffee and Limitless IP entered into the APA with Mott's for the purchase of Limitless' business.[6] KDP is not a party to the APA.[7]

Under the APA, Mott's agreed to a purchase price of $12 million, and potential earnout payment based on 2022 sales.[8] With respect to the earnout, Section 1.06 of the APA provides that:

> (a) <u>Earnout Notice.</u> Within ninety (90) days of the end of the Parent's fiscal 2022, Buyer shall determine . . . the 2022 Net Sales . . . based on the books and records of Parent and in accordance with GAAP, and provide a written notice (the "Earnout Notice") to the Sellers' Representative of its determination of the amount of 2022 Net Sales and the 2022 Earnout Amount.[9]

---

[2] D.I. No. 9.
[3] D.I. No. 19.
[4] D.I. No. 24.
[5] *See* Defendants Mott's LLP and Keurig Dr Pepper, Inc.'s Opening Brief in Support of Their Motion to Dismiss ("MTD") Ex. A (the "APA"), Recitals (D.I. No. 10).
[6] *See id*.
[7] *See* APA Recitals.
[8] *See* APA §§ 1.04, 1.06.
[9] *Id*. § 1.06(a).

(b)     Determination of 2022 Earnout Amount.  If and only to the extent that the Buyer's fiscal 2022 "Net Sales" . . . of the Existing products exceed $25,000,000.00 (twenty-five million dollars) Buyer will pay the Sellers 5.0% of the Buyer's 2022 Net Sales of the Existing Products (the "2022 Earnout Amount").[10]

Limitless alleges that Defendants made several assurances to Limitless that Defendants would dedicate certain resources and efforts in selling Limitless products.  For example, Defendants allegedly assured Limitless that KDP would distribute Limitless products through its nationwide truck distribution system.[11]  Defendants also allegedly promised Limitless that they would invest resources in marketing, and obtain new sales contracts.[12]  Limitless further alleges that Defendants intentionally limited investment in Limitless products in order to benefit a competitor with which it had entered into a business agreement.[13]  Limitless does not, however, identify any breach of representations in the APA, but instead contends that Defendants failed to act in a commercially reasonable manner.

On February 28, 2023, KDP informed Limitless that net sales were short of the threshold required for Limitless to receive any earnout amount.[14]  Limitless filed its complaint in this action on December 29, 2023.[15]

On March 7, 2024, Defendants submitted Defendants Mott's LLP and Keurig Dr Pepper, Inc.'s Opening Brief in Support of Their Motion to Dismiss.[16]  On April 19, 2024, Limitless submitted Plaintiffs Limitless Coffee, LLC and Limitless IP, LLC's Opposition Brief in Response to Defendants' Motion to Dismiss.[17]  On April 29, 2024, Defendants submitted

---

[10] *Id.* § 1.06(b).
[11] Compl. ¶¶ 25, 26.
[12] *Id.* ¶¶ 29-32.
[13] *Id.* ¶¶ 36-37.
[14] *Id.* ¶ 40.
[15] D.I. No. 1.
[16] D.I. No. 10.
[17] D.I. No 19.

Defendants Mott's LLP and Keurig Dr. Pepper, Inc.'s Reply Brief in Support of Their Motion to Dismiss.[18]

## III. STANDARD OF REVIEW

When considering a motion under Civil Rule 12(b)(6), the Court (i) accepts as true all well-pleaded factual allegations in the complaint, (ii) credits vague allegations if they give the opposing party notice of the claim, and (iii) draws all reasonable inferences in favor of the plaintiff.[19] The motion to dismiss will be denied "unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances."[20]

## IV. DISCUSSION

### A. Count I

In Count I, Limitless asserts two contractual breaches. Limitless maintains that Mott's and KDP are liable for breach of contract and breach of the implied covenant of good faith and fair dealing.

#### 1. Breach of Contract

Under Delaware law, to prove a breach of contract claim, a party must show: "(1) a contractual obligation; (2) a breach of that obligation; and (3) resulting damages."[21] A party harmed by a breach of contract is entitled to compensation that will place that party in the same position that the party would have been in if the other party had performed under the contract.[22]

---

[18] D.I. No. 21.
[19] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 27 A.3d 531, 535 (Del. 2011).
[20] *Id.*
[21] *Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 548 (Del. Super. 2005).
[22] *See E.I. DuPont de Nemours and Co. v. Pressman*, 679 A.2d 436, 445-46 (Del. 1996).

KDP is not a party to the APA, and Limitless falls short of pleading any agency or alter ego theory to otherwise hold KDP vicariously liable.[23]  Limitless' conclusory allegations regarding KDP do not support a claim.  Limitless alleges that: (i) KDP had a role in negotiations of the APA; (ii) the APA references of KDP; (iii) KDP's parent maintains a relationship with Mott's; and (iv) the APA uses KDP's income as the basis for the earn out provision.  The Court finds that, together or standing on their own, these alleged facts do not establish the domination or control necessary to infer that Mott's was an agent of KDP.[24]  Because KDP is not a party to the APA, the Court will dismiss the breach of contract claim against KDP.

The Court will also dismiss Count I against Mott's.  Limitless argues that Mott's did not take commercially reasonable actions in promoting the sale of Limitless products.  Limitless, however, identifies no provision in the APA requiring that Mott's take such action.  No provision in the APA states that Mott's is required to take commercially reasonable actions in achieving the earnout.  Limitless' breach of contract claim against Mott's will therefore be dismissed.

### 2.  *Implied Covenant of Good Faith and Fair Dealing*

In Delaware, the implied covenant attaches to every contract by operation of law.[25]  The implied covenant of good faith and fair dealing involves inferring contractual terms to address developments or contractual gaps that neither party anticipated.[26]  The implied covenant of good

---

[23] *Otto Candies, LLC v. KPMG, LLP*, 2020 WL 4917596, at *8 (Del. Ch. 2020) ("Delaware courts have also dismissed claims on the grounds of vicarious liability when only conclusory and insufficient allegations were pled.").

[24] *Id.* ("A party must allege facts supporting a reasonable inference that the purported principal had control over the wrongdoing at issue."); *see Weinstein Enterprises, Inc. v. Orloff*, 870 A.2d 499, 509 (Del. 2005) (citations omitted) (finding no inference of an agency relationship based on a parent's complete ownership of a subsidiary); *Skye Min. Invs., LLC v. DXS Cap. (U.S.) Ltd.*, 2020 WL 881544, at *24 (Del. Ch. 2020).  To the extent Limitless raises a veil-piercing theory, such a claim is equitable, and would not be properly before this Court.  *See Yu v. GSM Nation, LLC*, 2017 WL 2889515, at *3 (Del. Ch. 2017) (A claim premised on veil piercing "is an equitable claim.").

[25] *Metro. Life Ins. Co. v. Tremont Grp. Holdings, Inc.*, No. CIV.A. 7092-VCP, 2012 WL 6632681, at *15 (Del. Ch. Dec. 20, 2012).

[26] *Nationwide Emerging Managers, LLC v. Northpointe Holdings, LLC*, 112 A.3d 878, 896 (Del. 2015).

faith and fair dealing does not apply when the contract addresses the conduct at issue.[27] To state an implied covenant claim, a party must allege (i) a specific implied contractual obligation; (ii) a breach of that obligation; and (iii) resulting damage.[28] Those elements parallel a claim for breach of an express contract provision, except that the operative provision is implied.[29]

The implied covenant is "not an equitable remedy for rebalancing economic interests after events that could have been anticipated, but were not, that later adversely affected one party to a contract."[30] "Even where the contract is silent, an interpreting court cannot use an implied covenant to re-write the agreement between the parties, and should be most chary about implying a contractual protection when the contract could easily have been drafted to expressly provide for it."[31]

"[I]mplying obligations based on the covenant of good faith and fair dealing is a cautious enterprise."[32] "[T]he implied covenant only applies where a contract lacks specific language governing an issue and the obligation the court is asked to imply advances, and does not contradict, the purposes reflected in the express language of the contract."[33] The implied covenant of good faith and fair dealing should not be applied to give plaintiffs contractual protections that "they failed to secure for themselves at the bargaining table."[34] General allegations of bad faith conduct are not sufficient.[35]

As stated above, the Complaint fails to identify any contractual provision requiring

---

[27] *Id.*

[28] *Cantor Fitzgerald, L.P. v. Cantor*, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998).

[29] See Cygnus Opportunity Fund, LLC v. Washington Prime Group, LLC, 302 A.3d 430, 458 (Del. Ch. 2023).

[30] *Nemec v. Shrader*, 991 A.2d 1120, 1128 (Del. 2010).

[31] *Oxbow Carbon & Mins. Hldgs., Inc. v. Crestview-Oxbow Acq., LLC*, 202 A.3d 482, 507 (Del. 2019).

[32] *Cincinnati SMSA Ltd. v. Cincinnati Bell Cellular Sys. Co.,* 708 A.2d 989, 992 (Del. 1998).

[33] *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 146 (Del. Ch. 2009).

[34] *Winshall v. Viacom Int'l, Inc.*, 55 A.3d 629, 636–37 (Del. Ch. 2011), *judgment entered*, (Del. Ch. 2013), *aff'd,* 76 A.3d 808 (Del. 2013), *as corrected* (Oct. 8, 2013).

[35] *Kuroda v. SPJS Holdings, L.L.C.,* 971 A.2d 872, 888 (Del. Ch. 2009).

Mott's to take commercially reasonable actions in promoting the sale of Limitless products. Limitless alternatively argues that the implied covenant of good faith and fair dealing should be applied to fill this alleged gap. Limitless, however, fails to plead a sustainable claim for breach of the implied covenant of good faith and fair dealing.

Limitless could have negotiated for earnout protections, including a commercially reasonable efforts clause,[36] but did not. Mott's was, therefore, under no contractual obligation to take "commercially reasonable" efforts to meet the earnout threshold.[37] The APA only spoke of the obligation to paying an earnout if the business hit certain sales threshold.[38] Limitless identifies no contractual provision establishing what efforts Mott's was required to take in order to hit the earnout trigger. Finding now, through the implied covenant of good faith and fair dealing, that Mott's was required to take commercially reasonable efforts upsets the bargain the parties originally struck.

The Court will also dismiss the implied covenant of good faith and fair dealing claim against KDP because, as discussed above, KDP is not a party to the APA.

### B. Count II

For similar reasons, the Court will dismiss Limitless' tortious interference with contractual relations and inducement of breach of contract. The elements of a claim for tortious

---

[36] *See* Lou R. Kling & Eileen T. Nugent, 2 Negotiated Acquisitions of Companies, Subsidiaries and Divisions § 13.06 (2019); Ryan Aaron Salem, *An Effort to Untangle Efforts Standards Under Delaware Law*, 122 PENN ST. L. REV. 793, 799–803 (2018) (listing several "variant[s]" of efforts standards used by contractual parties).

[37] Limitless argues that the APA conferred broad discretion on Mott's in managing the business, and that Defendants had an implied obligation to not abuse such discretion. Limitless, however, identifies no discretionary-granting provision, and even if it did, it relies upon conclusory allegations that Defendants acted in bad faith by intentionally "tanking" the business. *See* Compl. ¶¶ 36-42. For example, Limitless points out that sales were higher pre and post-acquisition, and that Limitless' products were becoming a "popular" brand. *Id*. ¶¶ 24-26. But this is a conclusory allegation that seeks to raise the inference of bad faith on a business' performance alone. Additionally, Limitless argues that Defendants made false assurances about distribution and marketing efforts. *Id*. ¶¶ 27-28. But Limitless did not bargain for these guarantees in the form of a representation in the APA, and crying bad faith now is but a backdoor attempt to insert contractual provisions that were not bargained for.

[38] *See* APA § 1.06.

interference with a contract are (i) a contract, (ii) about which defendant knew, and (iii) an intentional act that is a significant factor in causing the breach of such contract, (iv) without justification, (v) which causes injury.[39] "Delaware generally follows the Restatement with respect to tortious interference."[40]

The Court has already determined that neither Mott's nor KDP were contractually obligated to undertake commercially reasonable efforts to meet the earnout targets. As there is no contractual obligation to undertake commercially reasonable efforts in meeting the earnout targets, KDP could not tortiously interfere with Mott's failure to do so.

## V. CONCLUSION

For the reasons set forth above, the Motion to Dismiss is **GRANTED.**

September 19, 2024
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc:    File&ServeXpress

---

[39] *Bhole, Inc. v. Shore Invs., Inc.*, 67 A.3d 444, 453 (Del. 2013).
[40] *Grunstein v. Silva,* 2009 WL 4698541, at *16 (Del. Ch. 2010).