# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

CARING PEOPLE HOLDCO, LLC,
CARING PEOPLE MANAGEMENT
SERVICES COMPANY, LLC, CARING
PEOPLE FL OPERATING, LLC, CARING
PEOPLE NJ OPERATING, LLC and
CARING PEOPLE NY OPERATING, LLC,

      Plaintiffs,

      v.

SHALOM (STEVEN) EAST,
CARINGONDEMAND, LLC, and
JENNIFER DEVINE,

      Defendants.

SHALOM (STEVEN) EAST and
CARINGONDEMAND, LLC,

      Counterclaim and Third-Party
      Plaintiffs,

      v.

CARING PEOPLE HOLDCO, LLC,
CARING PEOPLE MANAGEMENT
SERVICES COMPANY, LLC, CARING
PEOPLE FL OPERATING, LLC, CARING
PEOPLE NJ OPERATING, LLC, and
CARING PEOPLE NY OPERATING, LLC,

      Counterclaim Defendants, and

SILVER OAK CP, LLC, GREGORY M.
BARR, and ANDREW GUSTAFSON,

      Third-Party Defendants.

C.A. No. 2024-0125-SEM

# ORDER GRANTING MOTION TO DISMISS

WHEREAS, Caring People Holdco, LLC ("Holdco"), on behalf of itself and its affiliated buyer entities Caring People Management Services Company, LLC; Caring People FL Operating, LLC; Caring People NJ Operating, LLC; and Caring People NY Operating, LLC (the "Plaintiffs") filed a complaint (the "Initial Complaint") against Shalom (Steven) East, and CaringOnDemand, LLC ("COD") on February 12, 2024;[1]

WHEREAS, in the Initial Complaint, the Plaintiffs pled nine counts for: (I) breach of contract: non-competition covenant (against East); (II) breach of contract: non-solicitation covenant (against East); (III) breach of contract: confidentiality covenant (against East); (IV) breach of contract: Holdco agreement (against East); (V) breach of the implied covenant of good faith and fair dealing (against East); (VI) breach of incentive units agreement (against East); (VII) breach of fiduciary duty (against East); (VIII) tortious interference with contractual relations (against East); and (IX) tortious interference with contractual relations (against COD);[2]

---

[1] Docket Item ("D.I.") 1 ("Initial Compl."). Concurrent with the filing of the Initial Complaint, the Plaintiffs filed motions to expedite proceedings and for a preliminary injunction. D.I. 2–3. Vice Chancellor Cook, who was originally assigned this case, denied the motion to expedite on March 12, 2024. D.I. 27.

[2] Initial Compl. ¶¶ 42–104.

WHEREAS, on March 5, 2024, COD filed a motion to dismiss the count brought against it in the Initial Complaint under Court of Chancery Rule 12(b)(6);[3]

WHEREAS, on March 12, 2024, East and COD answered the Initial Complaint, offered five affirmative defenses, and submitted counterclaims against the Plaintiffs, as well as third-party claims against Silver Oak CP, LLC, Gregory M. Barr, and Andrew Gustafson;[4]

WHEREAS, on April 22, 2024, the Plaintiffs filed an amended complaint against East, COD, and newly added defendant Jennifer Devine (the "Amended Complaint");[5] through the Amended Complaint, the Plaintiffs pled eleven counts for: (I) breach of contract: non-competition covenant (against East); (II) breach of contract: non-solicitation covenant (against East); (III) breach of contract: confidentiality covenant (against East); (IV) breach of contract: Holdco agreement (against East); (V) breach of contract (against Devine); (VI) breach of implied covenant of good faith and fair dealing (against East and Devine); (VII) breach of

---

[3] D.I. 20.

[4] D.I. 26.

[5] D.I. 45 ("Am. Compl."). The following facts are taken from the Amended Complaint, and I do not accept as true or draw any conclusions from the additional factual predicate offered in COD's opening brief in support of its motion to dismiss. *See* D.I. 61 at 1–4 (preliminary statement). In so holding, I expressly decline to convert the motion to one for summary judgment, as alternatively proposed by the Plaintiffs. *See* Ct. Ch. R. 12(d) ("If a party moves under Rule 12(b)(6) or 12(c) and presents matters outside the pleadings that are not excluded by the Court, then: (1) the motion must be treated as one for summary judgment under Rule 56; and (2) all parties must be given a reasonable opportunity to present pertinent material under Rule 56.").

incentive units agreement (against East); (VIII) breach of incentive units agreement (against Devine); (IX) breach of fiduciary duty (against East); (X) tortious interference with contractual relations (against East); and (XI) tortious interference with contractual relations (against COD);[6]

WHEREAS, on May 6, 2024, COD moved to dismiss the Amended Complaint under Court of Chancery Rule 12(b)(6) (the "Motion");[7] the Motion was fully briefed as of June 26, 2024,[8] and after this action was transferred to me on May 30, 2025,[9] I heard oral argument on July 14, 2025, and took the Motion under advisement;[10] I am issuing this ruling expeditiously given the July 18, 2024 schedule set by Vice Chancellor Cook, which includes an impending deadline for requests for leave to move for summary judgment (August 15, 2025) and a four-day trial starting January 20, 2026;[11]

WHEREAS, the following facts are accepted as true solely for purposes of adjudicating the Motion:[12]

---

[6] Am. Compl. ¶¶ 63–137.

[7] D.I. 55, 61.

[8] D.I. 77.

[9] D.I. 147.

[10] *See* D.I. 162. At that hearing, I also heard argument—and ruled on—the Plaintiffs' motion to compel discovery from defendant Devine. *See* D.I. 166.

[11] D.I. 88.

[12] Under Court of Chancery Rule 12(b)(6) "the court (i) accepts as true all well-pleaded factual allegations in the complaint, (ii) credits vague allegations if they give the opposing

A.      Through a transaction with a final closing date of July 18, 2018, East sold the Plaintiffs certain equity and substantially all assets associated with his business, in exchange for consideration of roughly $30 million in cash, rollover equity, and other valuable consideration.[13] East further negotiated for a position as chief executive officer of the newly acquired company and a seat on Holdco's board of managers.[14] East also agreed to be bound by certain restrictions, including non-competition, non-solicitation, and confidentiality covenants.[15] But there was a carve out; the parties agreed that, at the time the transaction closed, East's involvement in COD's predecessor entity, Avior Sciences, LLC, did not constitute prohibited competition.[16]

B.      Sometime thereafter, East transformed Avior Sciences, LLC into COD, which develops software applications designed to facilitate communications between and among those involved in the delivery and receipt of home health service.[17] On or about September 1, 2019, COD licensed Holdco and its direct and

---

party notice of the claim, and (iii) draws all reasonable inferences in favor of the plaintiff." *Delawareans for Educ. Opportunity v. Carney*, 2018 WL 4849935, at *9 (Del. Ch. Oct. 5, 2018).

[13] Am. Compl. ¶ 12.

[14] *Id.*

[15] *Id.* ¶¶ 13–14, 16–18.

[16] *Id.* ¶ 15.

[17] *Id.* ¶ 42.

indirect subsidiaries the right to employ certain proprietary software and application technology for a $5,000/month license fee, though COD terminated the agreement on or around February 6, 2023.[18]

C.     Under East's direction, COD has substantially evolved to now compete with Holdco and its affiliates.[19] The Plaintiffs plead that Devine has "posted on the social media and business networking website, LinkedIn, as recently as on or about March 27, 2024 promoting COD's services and stating that COD 'provides the right care for seniors, at the right time.'"[20] But beyond that, the Plaintiffs do little more than offer legal conclusions of competition, unsubstantiated by any factual predicate.

D.     The Plaintiffs also contend that COD has acted with East and Devine to solicit and hire various employees, and has made disparaging remarks for personal gain.[21] They allege that such commentary has been made to "[Gail] Feder, Ellen Emerson, [and] perhaps . . . others[,]"[22] but there are no factual averments in support thereof offering any insight beyond purportedly "disparag[ing]" remarks designed to "diminish the confidence of existing employees[.]"[23]

---

[18] *Id.* ¶ 43.

[19] *Id.* ¶ 44.

[20] *Id.* ¶ 39.

[21] *Id.* ¶ 52.

[22] *Id.*

[23] *Id.*

E.     The Plaintiffs further allege competitive conduct, including knowingly calling customers and referral sources in an effort to induce or encourage those customers and referral sources to instead do business with East.[24] They say East has also formed at least one additional Florida LLC, with which Devine is also involved, which will seemingly offer competing services.[25] To support the legal conclusion of "competitive conduct," the Plaintiffs cite calling on customers and referral sources "in an effort to induce or encourage those customers and referral sources to materially reduce business" in divergence from the Plaintiffs.[26] But there are no additional facts pled to substantiate such propositions, such as the identities of the customers or referral sources.

F.     The Plaintiffs posit that East or Devine have acted in concert with COD, in addition to working to extend COD's business into a competitive one, and that they have also used confidential information including valuable business relationships, business models, and business strategy.[27] Without further explanation, they offer that East or COD are tortiously interfering with Devine and Feder's contractual obligations to protect confidential and proprietary business information, by using and leveraging their knowledge and experience to unfairly compete and

---

[24] *Id.*

[25] *Id.* ¶ 57.

[26] *Id.* ¶ 52.

[27] *Id.* ¶¶ 58–59.

capitalize on their intimate knowledge.[28] The Plaintiffs also say that revenue previously received through referral sources holding relationships with East and Devine "has substantially diminished, resulting in significant economic harm[.]"[29]

WHEREAS, under Court of Chancery Rule 12(b)(6) "the court (i) accepts as true all well-pleaded factual allegations in the complaint, (ii) credits vague allegations if they give the opposing party notice of the claim, and (iii) draws all reasonable inferences in favor of the plaintiff[;] [w]hen applying this standard, dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof[;]"[30] the Court "need not accept conclusory allegations as true, nor should inferences be drawn unless they are truly reasonable[;]"[31]

WHEREAS, a party alleging tortious interference with a contract must plead: "(1) a contract, (2) about which defendant knew, and (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury[;]"[32]

---

[28] *Id.* ¶ 60.

[29] *Id.* ¶ 62.

[30] *Delawareans*, 2018 WL 4849935, at *9 (citation modified).

[31] *MaD Invs. GRMD, LLC v. GR Cos.*, 2020 WL 6306028, at *2 (Del. Ch. Oct. 28, 2020) (citation modified).

[32] *Bhole, Inc. v. Shore Invs., Inc.*, 67 A.3d 444, 453 (Del. 2013) (citation modified).

WHEREAS, damages must be pled beyond mere "[c]onclusions of law or fact unsupported by factual allegations[,] [which] will not be assumed to be true[;]"[33] "[a]t the pleading stage, a plaintiff need not specify a monetary amount" and instead may "plead the existence of damages generally as long as the complaint supports a reasonable inference of harm[;]"[34]

**IT IS HEREBY ORDERED**, this 25th day of July 2025, as follows:

1.     The Motion is **GRANTED**. The Plaintiffs have not pled sufficient factual predicate to state a reasonably conceivable claim for tortious interference by COD.

2.     **Underlying Breach Due to Intentional, Unjustified Act.** The Plaintiffs have alleged that Feder, Devine, and East entered into valid and binding employment agreements, of which COD is fully aware. In dispute, however, is whether the Plaintiffs have sufficiently alleged that COD took an intentional act that was a significant factor in causing the breach of those agreements, and did so without justification. They have not. The Plaintiffs' allegations are largely legal conclusions unsupported by well-pled facts. There is only one concrete example of alleged interference: a LinkedIn post purportedly made by Devine promoting COD's

---

[33] *Griffin Corp. Servs., LLC v. Jacobs*, 2005 WL 2000775, at *5 (Del. Ch. Aug. 11, 2005).

[34] *Firefighters' Pension Sys. of Kan. City, Mo. Tr. v. Presidio, Inc.*, 251 A.3d 212, 280 (Del. Ch. 2021).

services and stating that COD "provides the right care for seniors, at the right time." That is not enough to state a reasonably conceivable claim of COD's alleged interference. Even on the plaintiff-friendly notice pleading standard, the amended complaint falls far short of the factual predicate necessary for the claim against COD to survive the pleading stage.

3. **Damages.** COD separately argues that the Plaintiffs failed to plead damages underlying the purported breaches outside of bald and conclusory statements, and avers that for this independent reason, the claim against it should be dismissed. I disagree. To plead damages, the Plaintiffs only needed to offer a reasonable inference of harm. They did so by pleading that revenue previously received through referral-source relationships diminished, resulting in economic loss. Although I recognize COD's argument that the revenue decline can be attributed to several other variables, such is not an appropriate inquiry at the pleading stage. Nonetheless, this issue is moot, because the Plaintiffs failed to state a reasonably conceivable claim against COD.

4. This action will continue without Count XI, which is hereby dismissed. COD remains a party through the counterclaims and third-party complaint.

5. This is a magistrate's report, and exceptions are stayed under Rule 144.

**IT IS SO ORDERED.**

/s/ Selena E. Molina
Senior Magistrate in Chancery