SUPERIOR COURT
OF THE
STATE OF DELAWARE

PAUL R. WALLACE
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0660

Date Submitted:  December 9, 2022
Date Decided:  December 13, 2022

John G. Harris, Esquire
BERGER HARRIS LLP
1105 N. Market St., 11th Floor
Wilmington, Delaware 19801

Eric M. Andersen, Esquire
ANDERSEN SLEATER SIANNI LLC
2 Mill Road, Suite 202
Wilmington, Delaware 19806

Angus F. Ni, Esquire
AFN LAW, PLLC
506 2nd Avenue, Suite 1400
Seattle, Washington 98104

RE:  *Zuoli Li v. Xu-Nuo Pharma, Inc. and Yinglin Mark Xu*
     C.A. No. N22C-08-417 PRW CCLD
     Defendant Yinglin Mark Xu's Motion to Dismiss Count II

Dear Counsel:

This Letter Order resolves Defendant Yinglin Mark Xu's pending Motion to

Dismiss Count II of Plaintiff Zuoli Li's Amended Complaint.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In January 2019, Plaintiff Zuoli Li entered into two contracts with non-party

Xynomic Pharmaceuticals, Inc. ("Xynomic") for the purpose of helping Xynomic:

(1) become a publicly-traded company, and (2) join the NASDAQ Index.[1]  The first

---

[1]  Am. Compl. ¶ 1, Sept. 8, 2022 (D.I. 3).

agreement, entered into on January 1, 2019, was a consulting agreement, and the second, entered into on January 21, 2019, was a stock option agreement.[2] The consulting agreement was to run between January 1, 2019 and December 31, 2020.[3] As part of her consulting agreement, Ms. Li was awarded stock options.[4]

On May 15, 2019, Xynomic became a public company through a SPAC merger, with the surviving public company named Xynomic Pharmaceuticals Holdings, Inc. ("Xynomic Holdings").[5]

After the merger, "99.3% of all SPAC investors exercised their right to a return of their capital."[6] And soon thereafter, because Xynomic Holdings could not "meet the minimum capital requirements" of the index, NASDAQ removed Xynomic Holdings from its index.[7]

Xynomic Holdings blamed Ms. Li for this failure.[8] So, on November 30, 2020 (a month before the consulting agreement was to end by its own terms), Xynomic Holdings—alleging Ms. Li materially breached its terms—terminated the consulting

---

[2]  *Id.*

[3]  *Id.*

[4]  *Id.*

[5]  *Id.* ¶ 2.

[6]  *Id.* ¶ 3.

[7]  *Id.* ¶ 4.

[8]  *Id.* ¶¶ 5-6.

agreement for cause.[9]

The stock option agreement provided that if Ms. Li was terminated for cause, then her stock option would immediately terminate.[10]

Xynomic Holdings' CEO Yinglin Mark Xu notified Ms. Li on November 30th that the consulting agreement was terminated.[11]

The next day, Ms. Li sought to exercise her options to purchase shares of Xynomic Holdings.[12]

Just about two months later, Xynomic Holdings was acquired by co-defendant Xu-Nuo Pharma, Inc. ("Xu-Nuo Pharma") through a short-form merger.[13] To effectuate this acquisition, shareholders were able to either transfer their shares or have their shares bought out.[14] To cash-out those shareholders electing that option, Mr. Xu personally loaned his company, Xu-Nuo Pharma, the money through a non-interest-bearing promissory note.[15]

---

[9] *Id.*

[10] *Id.*, Ex. B § 2.2(d).

[11] *Id.* ¶ 19. He did so via his personal email (*i.e.,* Gmail) account. And he did so without first discussing the termination with Xynomic Holdings' Board. *Id.*

[12] *Id.* ¶ 7.

[13] *Id.* ¶ 8.

[14] *Id.* ¶ 18; *see id.*, Ex. C at 3.

[15] *Id.*, Ex. C. at 3 ("Yinglin Mark Xu, as the sole director of Parent, agreed to loan the fund to Parent to pay out the Company Remaining Shares. Such loan is evidenced by a noninterest-bearing

Xu-Nuo Pharma paid Ms. Li no consideration from this acquisition because it found she was not a proper shareholder of Xynomic Holdings.[16]

Ms. Li later filed a complaint in the Court of Chancery to contest Xu-Nuo Pharma's actions.[17] The Court of Chancery questioned whether it had jurisdiction over the action.[18] And the parties then stipulated this Court was the appropriate forum to hear the action and asked for a transfer here.[19] The Court of Chancery obliged.[20]

Ms. Li filed—and soon thereafter amended—her Complaint here.[21]

In Count I (breach of contract against Xu-Nuo Pharma), Ms. Li alleges Xynomic Holdings (and its successor Xu-Nuo Pharma) breached the consulting agreement and stock option agreement by not issuing her Xynomic Holdings shares

---

promissory note issued by the Parent which is payable in cash or the same value of newly issued shares of common stock of the Parent at a price of Cash Merger Consideration upon the closing of the Merger, at the holder's choice, within one year of the issuance (the "**Promissory Note**").") (bold in original).

[16] *Id.* ¶ 9.

[17] C.A. 2021-1019-MTZ ("Chancery Action") D.I. 1 (Del. Ch. Nov. 23, 2021).

[18] Chancery Action, D.I. 27 at 38 ("THE COURT: Well, on that point, I mean, I'll be transparent with you. I don't think that I have subject matter jurisdiction over the claim as pled. And it seems to me that the choices are either arbitration or Superior Court. And I think that the law tells me that when there is a choice like that, it is not for a court that completely lacks subject matter jurisdiction to make that decision.") (Del. Ch. Aug. 3, 2022).

[19] Chancery Action, D.I. 25 (Del. Ch. July 25, 2022).

[20] Chancery Action, D.I. 26 (Del. Ch. July 27, 2022).

[21] D.I. 1; D.I. 3.

pursuant to those agreements.[22]

In Count II (tortious interference of a contract against Yinglin Mark Xu), Ms. Li alleges Mr. Xu tortiously interfered in the consulting and stock option agreements.[23]

## II. STANDARD OF REVIEW

### A. Motion to Dismiss Under Rule 12(b)(2)

"A non-resident defendant may move to dismiss for lack of personal jurisdiction under this Court's Civil Rule 12(b)(2)."[24] "Generally, a plaintiff does not have the burden to plead in its complaint facts establishing a court's personal jurisdiction over [a non-resident] defendant."[25] But when 12(b)(2) is invoked, the plaintiff does carry this burden.[26] Where no discovery has been conducted,

---

[22] Compl. ¶ 11.

[23] *Id.* ¶¶ 13-14.

[24] *Green Am. Recycling, LLC v. Clean Earth, Inc.*, 2021 WL 2211696, at *3 (Del. Super. Ct. June 1, 2021) (citing Del. Super. Ct. Civ. R. 12(b)(2)).

[25] *Focus Fin. P'rs, LLC v. Holsopple*, 241 A.3d 784, 800 (Del. Ch. 2020) (citation omitted). Precedent resolving dismissal motions filed under the Court of Chancery's analogous rules is usually of equal influence when addressing those filed under this Court's rules. *See, e.g.*, *CLP Toxicology, Inc. v. Casla Bio Hldgs. LLC*, 2020 WL 3564622, at *9 n.65 (Del. Ch. June 29, 2020) (finding no difference in the Rule 12(b)(2) context and collecting authority); *see also Green Am. Recycling*, 2021 WL 2211696, at *3 n.40.

[26] *Green Am. Recycling*, 2021 WL 2211696, at *3 (citing *AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 437-38 (Del. 2005)).

plaintiff's burden is a *prima facie* one.[27]  As such, "the Court 'is not limited to the pleadings and can consider affidavits, briefs of the parties,' and the record as a whole."[28]  "Still, unless contradicted by affidavit, the Court must (1) accept as true all well-pleaded allegations in the complaint; and (2) construe the record in the light most favorable to the plaintiff."[29]

## B. Motion to Dismiss Under Rule 12(b)6)

"Under Superior Court Civil Rule 12(b)(6), the legal issue to be decided is, whether a plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint."[30] Under that Rule, the Court will

> (1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as "well pleaded" if they give the opposing party notice of the claim, (3) draw all reasonable inferences in favor of the non-moving party, and (4) not dismiss the claims unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[31]

---

[27]  *Id.*; *see also id.* at *3 n.42.

[28]  *Id.* at *3 (quoting *Hartsel v. Vanguard Gp., Inc.*, 2011 WL 2421003, at *7 (Del. Ch. June 15, 2011)).

[29]  *Id.* (internal quotation marks and citations omitted); *see also id.* at *3 n.44-45.

[30]  *Vinton v. Grayson*, 189 A.3d 695, 700 (Del. Super. Ct. 2018) (quoting Super. Ct. Civ. R. 12(b)(6)).

[31]  *Id.* (quoting *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011)).

"If any reasonable conception can be formulated to allow Plaintiffs' recovery, the motion must be denied."[32]

The Court must accept as true all well-pleaded allegations for Rule 12(b)(6) purposes.[33] Every reasonable factual inference will be drawn in the non-moving party's favor.[34] If the claimant may recover under that standard, then the Court must deny the motion to dismiss.[35] This is because "[d]ismissal is warranted [only] where the plaintiff has failed to plead facts supporting an element of the claim, or that under no reasonable interpretation of the facts alleged could the complaint state a claim for which relief might be granted."[36]

## III. DISCUSSION

### A. THE COURT DOESN'T HAVE PERSONAL JURISDICTION OVER MR. XU.

Mr. Xu first asserts lack of personal jurisdiction in Delaware.[37] In response, Ms. Li argues the Court has personal jurisdiction over Mr. Xu under both the

---

[32] *Id.* (citing *Cent. Mortg. Co.*, 27 A.3d at 535).

[33] *Anderson v. Tingle*, 2011 WL 3654531, at *2 (Del. Super. Ct. Aug. 15, 2011).

[34] *Wilmington Sav. Fund Soc'y, F.S.B. v. Anderson*, 2009 WL 597268, at *2 (Del. Super. Ct. Mar. 9, 2009) (citing *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005)).

[35] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).

[36] *Hedenberg v. Raber*, 2004 WL 2191164, at *1 (Del. Super. Ct. Aug. 20, 2004).

[37] Def.'s Mot. to Dismiss at 1, Sept. 20, 2022 (D.I. 6).

Director Consent Statute and the Delaware Long-Arm Statute.[38]

"[T]o assess whether personal jurisdiction exists over non-resident defendants, Delaware courts apply a two-step analysis, asking first whether there is a statutory basis for jurisdiction and then inquiring into whether the exercise of personal jurisdiction over the defendants would be consistent with due process."[39]

In applying the constitutional requirement for personal jurisdiction, our Supreme Court has adopted the *International Shoe* test, and its progeny, for minimum contacts.[40] And this applies to both personal jurisdiction under the Director Consent Statute and the Long-Arm Statute.[41]

The Court of Chancery found in *BAM International, LLC v. MSBA Group, Inc.*, the defendants did not have the constitutionally required minimum contacts with Delaware because

> Delaware has no real interest in this case other than the exercise of personal jurisdiction over officers and directors . . . the only harms alleged to have been committed by the Moving Defendants sound in tort—they are not fiduciary duties, nor do they implicate corporate governance practices. And the actions allegedly giving rise to their

---

[38] Pl.'s Answering Br. at 5, Oct. 19, 2022 (D.I. 9).

[39] *BAM Int'l, LLC v. MSBA Gp., Inc.*, 2021 WL 5905878, at *5 (Del. Ch. Dec. 14, 2021) (citation omitted).

[40] *Hazout v. Tsang Mun Ting*, 134 A.3d 274, 278 (Del. 2016) (citing *Int'l Shoe Co. v. Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310 (1945) and its progeny).

[41] *Id.* at 291.

liability were not taken as officers of [the company].[42]

Here, Ms. Li's claim against Mr. Xu sounds in tort, does not implicate corporate governance practices, and, according to Ms. Li for this specific count, asserts alleged acts taken in his personal capacity.[43]  Thus, for this tortious interference claim as pled, minimum contacts do not exist for this Court to exercise personal jurisdiction over Mr. Xu.  That lack of personal jurisdiction over Mr. Xu would be enough in this instance to dismiss Count II of Ms. Li's complaint.

### B. MS. LI'S TORTIOUS INTERFERENCE WITH A CONTRACT CLAIM FAILS UNDER RULE 12(B)(6).

In addition to his personal jurisdiction argument, Mr. Xu invokes Rule 12(b)(6).  "Under Delaware law, the elements of a claim for tortious interference with a contract are: (1) a contract, (2) about which defendant knew, *and* (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury."[44]

As this Court has observed:  "in order to state a claim for tortious interference

---

[42]  *BAM Int'l*, 2021 WL 5905878, at \*10 (internal citation omitted).

[43]  As the Court of Chancery noted in *BAM International, LLC v. MSBA Group, Inc.*, the plaintiff in *Hazout v. Tsang Mun Ting* was litigating a change in corporate control action, not a "garden-variety commercial contract" and thus Delaware had an interest in seeing the issue litigated on its turf.  *BAM Int'l*, 2021 WL 5905878, at \*9 (citing *Hazout*, 134 A.3d at 291 & n.60).

[44]  *Bhole, Inc. v. Shore Invs., Inc.*, 67 A.3d 444, 453 (Del. 2013) (emphasis in original) (citation and quotation marks omitted).

against a corporate officer, a plaintiff must plead adequately that the officer (1) 'was not pursuing legitimate profit-seeking activities of the affiliated enterprise in good faith,' or (2) 'was motivated by some malicious or other bad faith purpose to injure the plaintiff.'"[45] "Delaware law presumes that a corporate officer's actions that cause the corporation to breach a contract were taken for the corporation's benefit."[46] So a plaintiff must adequately allege the officer was acting outside the scope of his employment for a tortious interference with a contract claim to survive.[47]

Here, Mr. Xu argues Count II should be dismissed under Rule 12(b)(6) because Ms. Li has failed to show there was an intentional act that was a significant factor in causing the breach of contract without justification.[48]

Ms. Li says that Mr. Xu terminated the consulting agreement because he personally did not want Ms. Li to exercise her stock options. According to Ms. Li, because she was unable to exercise her options and maybe take the cash-out option that was available, Mr. Xu was eventually saved millions of dollars by not having to

---

[45] *Am. Bottling Co. v. Repole*, 2020 WL 7787043, at *6 (Del. Super. Ct. Dec. 30, 2020) (quoting *Yu v. GSM Nation, LLC*, 2018 WL 2272708, at *15-16 (Del. Super. Ct. Apr. 24, 2018)).

[46] *Id.* (citation omitted).

[47] *Id.*; *Grand Ventures, Inc. v. Paoli's Rest., Inc.*, 1996 WL 30022, at *4-5 (Del. Super. Ct. Jan. 4, 1996).

[48] Def.'s Mot. to Dismiss at 15; *Bhole, Inc.*, 67 A.3d at 453 (citation omitted).

loan Xu-Nuo Pharma more money.[49]

The claim must be dismissed; the Complaint lacks sufficient factual allegations that Mr. Xu acted outside the scope of his employment. In her briefing, Ms. Li noted Mr. Xu used his personal email account to terminate the consulting agreement and that the contract termination was done without prior approval of the board of directors.[50] But at argument, Ms. Li conceded that neither her agreements, the corporate governing documents, nor general corporate governance law prohibited Mr. Xu's termination of this run-of-the-mill services contract such that his actions could be deemed outside the scope of his authority or employment. Indeed, Ms. Li admitted that termination of such a consulting agreement was precisely the type of action Mr. Xu was, as Xynomic Holdings' CEO, empowered to, and as a matter of course would, take without any need for board approval. While Ms. Li attempts to liken this contract termination to a major corporate decision that could only be done with board consent—such as a merger—that argument is unavailing and truly unpled.[51]

---

[49] Pl.'s Answering Br. at 13-14. Ms. Li argues that this case should be distinguished from the traditional cash-out merger scenario because of Mr. Xu's personal loan. *Id.* at 13-15.

[50] *See id.* at 15-16.

[51] Of note here too, Ms. Li—even in Count I—never pleads that consulting agreement's termination was in fact unjustified. She only suggests that Mr. Xu might have had some additional

Under no reasonable interpretation of Ms. Li's factual allegations could her tortious interference claim against Mr. Xu survive.[52]  Given even the most generous read possible, Ms. Li's allegations do not suggest Mr. Xu was failing to pursue Xynomic Holdings' legitimate profit-seeking activities in good faith when he terminated her consultancy or that he was motivated by some malicious or other bad faith purpose to injure her.  Put simply, Ms. Li has failed to plead the necessary elements of her tortious interference claim.  Accordingly, Count II warrants dismissal under Rule 12(b)(6).

---

or ulterior personal motive for ending her consultancy when the company he headed was removed from the NASDAQ index.

In determining whether a defendant acted improperly or without justification, our Supreme Court in *Cousins v. Goodier* reaffirmed a seven-factor test based on the Restatement (Second) of Torts, which looks at:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties.

283 A.3d 1140, 1166 (Del. 2022) (citation omitted).  While a tortious interference claim is not necessarily precluded if "the alleged tortfeasor can identify one proper motive among many unseemly ones," alleging one potential improper motive among many seemly ones weighs against finding improper motive.  *See id.* at 1166-67.

Here, Ms. Li intimates that Mr. Xu's motive was some potential future financial savings—which would require very liberal read to deem improper.  Again, this allusion to a mere speculative gain balanced against Mr. Xu's admitted duties and the six other *Cousin* factors fails to adequately allege Mr. Xu acted improperly or without justification.

[52]   *Hedenberg*, 2004 WL 2191164, at *1.

### IV. CONCLUSION

No doubt, there is some legal irony to this outcome. For Ms. Li's tortious interference claim to survive Rule 12(b)(6), she must argue that Mr. Xu was acting outside his corporate role. Yet to survive Rule 12(b)(2) here, Ms. Li must argue that Mr. Xu was acting in his corporate role. Ms. Li's decision to argue Mr. Xu was acting outside the scope of his corporate role dooms this specific claim under 12(b)(6) for factual insufficiency; and it does so under 12(b)(2) for legal insufficiency.

Defendant Yinglin Mark Xu's Motion to Dismiss the Tortious Interference with a Contract (Count II) claim, which is alleged only against him as an individual, is **GRANTED**.

**IT IS SO ORDERED.**

_____

Paul R. Wallace, Judge