**SUPERIOR COURT**
**OF THE**
**STATE OF DELAWARE**

**VIVIAN L. MEDINILLA**
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DE 19801-3734

Submitted: September 20, 2024
Decided: December 19, 2024

Philip Trainer, Jr., Esq.
Samuel M. Gross, Esq.
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899

Jamie L. Brown, Esq.
Gillian L. Andrews, Esq.
300 Delaware Avenue, Suite 200
Wilmington, DE 19801

Peter S. French, Esq.
Ann O. McCready, Esq.
One Indiana Square, Suite 3500
Indianapolis, IN 46204

> RE: **MHC IV, LLC V. TCFIV Venturi Buyer P, LLC f/k/a TCFIV PSC**
> **Buyer LLC, Venturi Supply LLC, and Trive Capital, Inc.**
> <u>**C.A. No.: No. N24C-02-174 VLM CCLD**</u>

Dear Counsel:

In this action, Plaintiff asserts various claims including breach of contract and tortious interference. Defendants move for dismissal under Superior Court Civil Rule 12(b)(6). For the reasons stated below, Defendants' Motion is **DENIED** as to Count I (Breach of Contract and Indemnity) and **GRANTED** as to Counts III and IV (Tortious Interference).

1

## *BACKGROUND*

For most of 2022, plaintiff MHC IV, LLC ("Seller") owned Tri-Star Industrial, LLC which was a giant distributor of pipes, valves, and fittings.[1] Wanting a slice of the pie, private equity firm Trive Capital, Inc. formed TCFIV Venturi Buyer P LLC ("Buyer") to purchase Tri-Star and five other like suppliers.[2] Trive also formed Venturi Supply LLC ("Venturi") to hold, control, and operate the new acquisitions.[3] In late 2022, Buyer and Seller entered into a Membership Interest Purchase Agreement ("MIPA") by which Buyer purchased "all of the issued and outstanding units" of Tri-Star.[4]

In addition to the purchase price, Section 2.06(a)(i) of the MIPA provides an earnout structure for payments up to $5,000,000 if Tri-Star achieved certain EBITDA goals.[5] Notably, Section 2.06(a)(iii) provides: "For the avoidance of doubt, if 2023 EBITDA is equal to or less than $7,000,000, the Earnout Payment

---

[1] *See* Complaint for Declaratory Relief and Damages ¶¶ 1-2, D.I. 1 (hereafter "Compl."). These facts are taken largely from the Complaint and documents integral thereto. *See Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 (Del. 2004) ("On a motion to dismiss, the Court may consider documents that are 'integral' to the complaint, but documents outside the pleadings may be considered only in 'particular instances and for carefully limited purposes.'"). Citations to the September 20, 2024 hearing transcript are in the form "Tr. #," D.I. 30. Interested readers are directed to the docket for additional factual predicate.

[2] Compl. ¶¶ 4, 6, 10.

[3] *Id.* ¶¶ 5, 11.

[4] *Id.*, Ex. A (MIPA) at RECITALS.

[5] *Id.* §§ 2.06(a)(i)-(ii) ("If 2023 EBIDTA [sic] is greater than or equal to $7,500,000, the Earnout Payment will be equal to $5,000,000[.]").

will be equal to zero and neither the Buyer nor any of its Affiliates (including [Tri-Star]) will have any obligation to make any payment . . . ."[6]

Post-closing, Buyer was entitled to operate Tri-Star at its discretion,[7] but Section 2.06(d)(vi) prohibited Buyer from terminating, reassigning, or transferring five key executives including Michael DiMino, Scott Chamberlain, and Sabrina Lucero (the "Key Three") before December 31, 2023.[8] Despite the provision, Buyer transferred and reassigned the Key Three from Tri-Star to Venturi before the cutoff date.[9] DiMino became CEO of Venturi; Chamberlain became VP – Global Projects and Pricing at Venturi; and Lucero became Venturi's Global Director ERP/IT.[10]

In January 2024, Seller notified Buyer of the breach allegations under the MIPA.[11] Buyer denied any breach arguing Section 2.04(e) (controlling dispute resolution) governed the issue instead.[12]

---

[6] *Id.* § 2.06(a)(iii).

[7] *Id.* § 2.06(d) ("[A]fter the Closing, the Buyer has the right to operate the Company in any way that the Buyer deems appropriate in the Buyer's sole discretion, and the Buyer is not obligated to operate the Company in a manner consistent with the manner in which the Company was operated prior to the Closing Date.").

[8] Compl. ¶¶ 14-15, 24; MIPA § 2.06(d)(vi) ("[T]he Buyer will[]not terminate without Cause the employment of any individual listed on Schedule 2.06(d)(vi) or reassign or transfer any such individual such that his or her full-time services are not available to [Tri-Star], except with respect to any termination, reassignment or transfer for Cause or as a result of such individual's failure to fulfill his or her job duties and responsibilities"); Compl., Ex. 2, Sch. 2.06(d)(vi) (reflecting the Key Three under a prohibited transfer list).

[9] Compl. ¶¶ 16-18.

[10] *Id.*

[11] *Id.* ¶¶ 19, 33-34.

[12] *Id.* ¶¶ 19, 35.

Seller then brought this action against Defendants seeking claims for: Breach of Contract and Indemnity (Count I), and Declaratory Judgment (Count II).[13] Seller also sought claims against Trive and Venturi individually for Tortious Interference (Counts III and IV).[14] Defendants subsequently moved to dismiss (the "Motion") under Rules 12(b)(1) and 12(b)(6).[15]

After the parties completed briefing, this Court heard oral argument on September 20, 2024 (the "Hearing"), at which time this Court took the Motion under advisement.[16]

## *ANALYSIS*

Defendants seek dismissal of this action based on the earnout provision of the MIPA. Upon a motion to dismiss under Rule 12(b)(6), the Court (i) accepts all well-pled factual allegations as true, (ii) accepts even vague allegations as well-pled if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[17] But the Court does not accept "conclusory allegations that lack

---

[13] *Id.* ¶¶ 39-56.

[14] *Id.* ¶¶ 57-77.

[15] *See generally* Defendants' Opening Brief in Support of Motion to Dismiss, D.I. 12 (hereafter, "MTD Opening Br.").

[16] D.I. 26-27, 29. Defendants abandoned the Rule 12(b)(1) basis for dismissal at the hearing. Tr. 19:22-20:1, 20:7-9, 44:17. Thus, this Court addresses dismissal only under Rule 12(b)(6).

[17] *See ET Aggregator, LLC v. PFJE AssetCo Hldgs. LLC*, 2023 WL 8535181, at *6 (Del. Super.

4

specific supporting factual allegations."[18]

### A. THE BREACH OF CONTRACT CLAIM SURVIVES.

Seller has stated a viable breach of contract claim against Buyer. To prevail on a breach of contract claim, a plaintiff must show "(1) the existence of a contractual obligation; (2) a breach of that obligation; and (3) damages resulting from the breach."[19] At this stage, a plaintiff must plead both damages and causation in a way that is not "speculative or conjectural."[20]

At the outset, the parties dispute which part of the MIPA controls. Defendants argue Seller's allegations are conclusory and fail to establish any damages.[21] Under this theory, Seller repudiated Section 2.06(b) by failing to timely object to the earnout calculation.[22] Defendants assert Seller's claims stem from a calculation issue because Tri-Star missed the $7 Million EBITDA threshold.

Seller counters by invoking the provisions of Section 2.06(d) arguing Buyer breached the operational covenant therein—which prohibited the reassigning and transferring of the Key Three—by altering the leadership resources available to Tri-

---

Dec. 8, 2023).

[18] *Id.* (quoting *Ramunno v. Crawley*, 705 A.2d 1029, 1034 (Del. 1998)).

[19] *Sarraf 2018 Fam. Tr. v. RP Holdco, LLC*, 2022 WL 10093538, at *6 (Del. Super. Oct. 17, 2022).

[20] *Petroleum v. Magellan Terminals Hldgs., L.P.*, 2015 WL 3885947, at *12 (Del. Super. June 23, 2015) (citing *Laskowski v. Wallis*, 205 A.2d 825, 826 (Del. 1964)).

[21] Tr. 18:11-12; MTD Opening Br. at 17.

[22] Tr. 20:13-21:16; MTD Opening Br. at 16-17.

Star.[23] Seller contends the executive exodus before the covenants expired led to Tri-Star's poor fiscal performance, which resulted in damages of $5 Million, at least.

Indeed, Defendants recognize the damages sought by Seller represent the maximum earnout payments available under the MIPA had the $7 Million EBITDA threshold been met.[24] But any argument about the speculative nature on the total amount of damages is premature. Section 2.06(d) explicitly prohibited reassigning and transferring the Key Three before the end of 2023. Still, Buyers plucked the Key Three from Tri-Star, dropped them into Venturi, and left a void in leadership. Accepting such allegations as true, it is reasonably conceivable Seller may be entitled to recover earnout payments. In short, Seller has adequately pled Count I.

### B.    THE TORTIOUS INTERFERENCE CLAIMS FAIL.

Seller has failed to state a viable tortious interference claim against Trive and Venturi. To succeed on a tortious interference claim, a plaintiff must show: "(1) a contract, (2) about which defendant knew, *and* (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury."[25] The first and second factors are undisputed, and the third and fifth factors are muddy; so the claims hinge on the fourth factor—without

---

[23] Tr. 22:16-20.

[24] Tr. 15:2-16; MTD Opening Br. at 1.

[25] *Ray Beyond Corp. v. Trimaran Fund Mgmt., L.L.C.*, 2019 WL 366614, at *9 (Del. Ch. Jan. 29, 2019) (emphasis in original) (quoting *Bhole, Inc. v. Shore Inves., Inc.*, 67 A.3d 444, 453 (Del. 2013)).

6

justification.[26]  In defense, Trive and Venturi assert the affiliate privilege doctrine.

"The affiliate privilege doctrine immunizes a controller from tort liability for its affiliates' contractual breaches."[27]  If the privilege applies, a complaint, on its face, cannot prove a parent's alleged interference was unjustified.[28]  To overcome the affiliate privilege, a plaintiff must show the parent acted maliciously or in bad faith.[29]  "Delaware courts are reluctant to find bad faith because affiliate interference often is a legitimate business strategy."[30]  "The bad faith standard is 'stringent' and will not be found where a parent was merely advising or causing the subsidiary to engage in an efficient breach of the contract."[31]  This means conclusory suppositions

---

[26] MTD Opening Br. at 19-23.

[27] *Surf's Up Legacy P'rs, LLC V. Virgin Fest, LLC*, 2021 WL 117036, at *1 (Del. Super. Jan. 13, 2021).

[28] *PPL Corp. v. Riverstone Hldgs. LLC*, 2019 WL 5423306, at *12 (Del. Ch. Oct. 23, 2019) (citing *Bhole*, 67 A.3d at 453)) ("If the [affiliate] privilege applies, the plaintiff will not be able to prove a *prima facie* element of the tort of intentional interference—that the parent's alleged interference with its subsidiary's contract was 'without justification.'").

[29] *Bhole*, 67 A.3d at 454.

[30] *Buck v. Viking Hldg. Mgmt. Co. LLC*, 2021 WL 673459, at *6 (Del. Super. Feb. 22, 2021). *See also Ray Beyond*, 2019 WL 366614, at *9 (first quoting *Shearin v. E.F. Hutton Gp., Inc.*, 652 A.2d 578, 590 (Del. Ch. 1994); and then citing *James Cable, LLC v. Millenium Digit. Media Sys., L.L.C.*, 2009 WL 1638634, at *4 (Del. Ch. June 11, 2009) ("Affiliate liability is narrowly construed because 'courts have recognized the common economic interests between [parents and subsidiaries] and have afforded them great latitude for discussion and joint decision making.'")).

[31] *PPL*, 2019 WL 5423306, at *3 (first citing *Allied Cap. Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1039 (Del. Ch. 2006); and then citing *NAMA Hldgs., LLC v. Related WMC LLC*, 2014 WL 6436647, at *30 (Del. Ch. Nov. 17, 2014)). *See Ray Beyond Corp. v. Trimaran Fund Mgmt., L.L.C.*, 2019 WL 366614, at *10 (Del. Ch. Jan. 29, 2019) (granting summary judgment where the allegations specific to the parent were insufficient to support an inference that the parent interfered with the contract at issue). *Contra I Am Athlete, LLC v. EnMotive, LLC*, 2024 WL 4904685, at *10-11 (Del. Super. Nov. 27, 2024) (granting a motion to dismiss where the allegations sufficiently alleged bad faith conduct by the parent).

absent specific facts are not enough. The complaint must allege that the non-party's sole motive in interfering with the subsidiary was done in bad faith.[32] In sum, a complaint lacking bad faith allegations is subject to dismissal.[33]

Here, the Complaint alleges Trive and Venturi used their control of Buyer, not to enrich Seller, but to divert value from Buyer to Trive and Venturi in a bad faith manner.[34] But that's it. The allegations in the Complaint, taken together, do not give rise to a reasonable inference Trive and Venturi directed Buyer to sign the MIPA with the primary purpose of causing the breach in bad faith. Sure, the Complaint alleges the Trive and Venturi "had actual notice and/or knowledge" of the operational covenants in the MIPA and directed the Buyer to transfer and reassign the Key Three.[35] Yet no facts are alleged as to how Trive and Venturi directed Buyer for the sole purpose of injuring Seller.[36] Conclusory allegations—

---

[32] *Buck*, 2021 WL 673459, at *6. *See also Surf's Up Legacy P'rs*, 2021 WL 117036, at *7 ("[T]here is no contractual mechanism for holding a non-party controller responsible for the controlled's breaches, a complaint must contain alleged facts to rebut the presumption that the controller was pursing its legitimate profit seeking interests in good faith—i.e., by showing that the controller's sole motive in interfering was bad faith to injure plaintiff." (citations omitted) (cleaned up)).

[33] *See Nivagen Pharm., Inc. v. Hikma Pharm. USA Inc.*, 2024 WL 1576519, at *3 (Del. Super. Apr. 11, 2024) (granting a motion to dismiss because "[n]ot one fact in the [c]omplaint relates to a reason why [the parent] would be motivated to injure [the subsidiary] or otherwise act against [other subsidiary]'s pecuniary interest."); *James Cable, LLC v. Millennium Digit. Media Sys, L.L.C.*, 2009 WL 1638634, at *5 (Del. Ch. June 11, 2009) (granting a motion to dismiss because the complaint did "not sufficiently allege any purpose behind [the controller]'s actions outside of an economic interest it shared with [the subsidiary].").

[34] *Allied Cap. Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1042 (Del. Ch. 2006).

[35] Compl. ¶¶ 60, 69.

[36] *Id.* ¶¶ 63, 74.

that Trive and Venturi "had no justification for [their] actions, which were improper and expressly prohibited by the [MIPA]" and "Trive formed Venturi as part of this strategic plan, for the purpose of holding, controlling and operating the Acquired PVF Suppliers"[37]—are insufficient to overcome the presumption the controllers were acting in good faith to maximize joint profits.[38] Without more, the claims against Trive and Venturi fail.

### *Conclusion*

Seller has sufficiently pled a breach of contract claim against Buyer. But Seller has not sufficiently pled a tortious interference claim against Trive and Venturi. Accordingly, the Motion to Dismiss is **DENIED** as to Count I (Breach of Contract and Indemnity) and **GRANTED** as to Counts III and IV (Tortious Interference).

Sincerely,

/s/ Vivian L. Medinilla
Vivian L. Medinilla
Judge

---

[37] *Id.* ¶¶ 11, 65, 76.

[38] *Nivagen*, 2024 WL 1576519, at *4.

9